DR. JOHN C. TAYLOE, DR. A. R. PETERS, JR., JOSEPH P. TUNSTALL, DR. SAM. H. WILLIAMS, JR., DR. W. C. PIVER, JR., DR. CLARK RODMAN, DR. DAVID T. TAYLOE, DR. R. G. SILVERTHORNE, AND DR. C. T. PARTRICK, PARTNERS, TRADING AND DOING BUSINESS AS TAYLOE DRUG COMPANY v. HARTFORD ACCIDENT & INDEMNITY COMPANY.

(Filed 19 September 1962.)

**1. Landlord and Tenant § 7—**

Under the terms of a lease obligating lessees of a store to keep the premises in repair, "unavoidable accidents excepted," lessees are liable for the cost of repairing the doors to the store damaged in a burglary, since such damages results from the intentional act of the burglar or burglars, and therefore is not the result of an unavoidable accident.

**2. Insurance § 93—**

Under a policy of insurance in favor of lessees of a store building, covering loss from burglary and damage to the premises owned by lessees or for which they are liable, insurer is liable for the cost of repairing doors to the store damaged in a burglary when lessees are liable under the terms of the lease for the repair of the premises except damage resulting from "unavoidable accidents."

APPEAL by defendant from *Mintz, J.,* June Term 1962 of BEAUFORT.

David T. Tayloe and Fred V. Tayloe own a store building located on West Main Street in Washington, North Carolina. By lease dated 29 August 1953 the store building was leased to the plaintiff partnership for use as a drug store. The lease period was from 1 January 1954 to 1 January 1964. The lease contained the following paragraph:

"The lessors agree that the lessees shall enjoy said premises during said term free and clear from the adverse claims of any person. And the lessees agree to make no unlawful use of said premises, to keep the premises in good repair, and deliver up the same at the end of the term in good order and condition, reasonable wear and tear and unavoidable accidents excepted."

On 29 April 1960 the defendant issued a Storekeepers' Burglary and Robbery Policy to the plaintiff partnership. The policy contained the following paragraph:

"VII. Damage. To pay for damage to the premises and to money, securities, merchandise, furniture, fixtures and equipment within the premises, by such robbery, kidnapping, burglary, safe burglary, robbery of a watchman, or attempt thereat, provided with respect to damage to the premises the insured is the owner thereof or is liable for such damage."

On or about 18 June 1960, during the night or early morning, and while the store was closed for business, one or more persons' entered

the store. Entrance was gained by smashing the glass, locks and frame of the two front doors, and by springing the hinges on which the doors swung. The party or parties entered the drug store and illegally removed therefrom merchandise and cash of the alleged value of $449.15. The doors of the store were damaged allegedly to the extent of $655.00.

Trial by jury was waived by all parties and it was agreed that the trial judge might hear the evidence, find the facts and enter judgment. Judgment was entered in favor of plaintiff partnership and against the defendant insurer in the sum of $979.62. Of this amount, $442.55 was awarded for merchandise and cash stolen from the drug store and is not contested or involved in this appeal. The defendant appeals from the remainder of the judgment in the amount of $537.07, which is the actual amount, according to the evidence, expended by plaintiff partnership for the repair or replacement of the aforesaid two front doors including metal frames, and assigns error.

*Carter & Ross for appellees.*
*James & Speight, William C. Brewer, Jr., for appellant.*

DENNY, C.J.   This appeal turns on whether or not the damage to the premises involved in this action resulted from an unavoidable accident within the terms of the plaintiff partnership's lease.

"Accident" is defined as "an unforeseen event, occuring without the will or design of the person whose mere act causes it; an unexpected, unusual, or undesigned occurrence; the effect of an unknown cause, or, the cause being known, an unprecedented consequence of it; a casualty." Black's Law Dictionary, Third Edition. This definition of an accident was cited with approval in *Thomas v. Lawrence*, 189 N.C. 521, 127 S.E. 585 and *Luttrell v. Hardin*, 193 N.C. 266, 136 S.E. 726.

In 1 C.J.S., Accident, page 443, an "unavoidable accident" is defined "as meaning an accident which cannot be avoided by that degree of prudence, foresight, care, and caution which the law requires of every one under the circumstances of the particular case, which is not occasioned by any degree, either remotely or directly, by the want of such care and skill as the law holds every man bound to exercise, or which occurs without fault attributable to any one; * * *."

Webster's Third New International Dictionary (Unabridged) defines "unavoidable casualty or unavoidable accident" as "an unintentional occurrence that cannot be avoided by the degree of care required of a person under all the circumstances. A casualty or accident happening without fault of any person involved."

In the case of *Baxley v. Cavenaugh*, 243 N.C. 677, 92 S.E. 2d 68, *Bobbitt, J.,* speaking for the Court, said: "An unavoidable accident,

as understood in the law of torts, can occur only in the absence of causal negligence."

There is a divergence of opinion among the authorities as to whether or not an intentional act of a third party or parties constitutes an "unavoidable accident." Some hold, however, that damage to leased premises by the act of a stranger is included in the term "unavoidable casualties." *Kirby v. Davis,* 210 Ala. 192, 97 So. 655.

In the case of *Leominster Fuel Co. v. Scanlon,* 243 Mass. 126, 137 N.E. 271, 24 A.L.R. 1459, the plaintiff had leased the premises from the defendant for a period of years. There was a plate-glass window in the leased premises next to the sidewalk, the window formed a part of the wall of plaintiff's office. The window was broken by a third person who ran into it from the street. The plaintiff brought an action against the lessor to recover for the expense of replacing the plate-glass window.

In the lease the lessee had covenanted, "To keep the premises in tenantable repair, damage by fire, unavoidable casualty, and unusual wear and tear alone excepted."

The Supreme Court of Massachusetts held: "The breaking of the window through accident or negligence by an outsider, for whose conduct neither the landlord nor the tenant were responsible, was not an 'unavoidable casualty' within the meaning of those words in the lease exonerating the tenant from keeping the premises in tenantable repair. *Welles v. Castles,* 3 Gray, 323; *French v. Pirnie,* 240 Mass. 489, 134 N.E. 353, 20 A.L.R. 1098.

"It follows that the defendant is under no liability to plaintiff for replacing the window. * * *" See Anno — Lease — Unavoidable Casualty, 20 A.L.R. 1101, *et seq.*

It appears from the evidence on this record that the plaintiff partnership remodeled the leased premises at a cost of approximately $16,000; building a completely new front, installing new doors and new windows. The glass double doors were of the double-action type with metal frames. The insurance policy involved contains this provision with respect to the property interest covered: "Ownership of Property; Interests Covered. The insured property may be owned by the insured, or held by the insured in any capacity whether or not the insured is liable for the loss thereof, or may be property as respects which the insured is legally liable; provided, the insurance applies only to the interest of the insured in such property, including the insured's liability to others, and does not apply to the interest of any other person or organization in any of said property unless included in the insured's proof of loss."

There is no controversy about the proof of loss. Proof of loss was waived by stipulation of counsel.

There is no contention that the lessors have any liability for repairs to the premises involved during the leased period. According to the evidence, all the property damage inflicted by the burglar or burglars was to property bought and installed by the partnership lessee and repaired or replaced by it after the robbery.

This Court has been inclined to the view that where injury or death has resulted from the intentional or wrongful conduct of a third party, the death or injury was not the result of accidental means. *Slaughter v. Insurance Co.*, 250 N.C. 265, 108 S.E. 2d 438; *Goldberg v. Insurance Co.*, 248 N.C. 86, 102 S.E. 2d 521.

In the case of *Slaughter v. Insurance Co., supra*, the action was brought by the plaintiff, beneficiary, to recover on an accident policy issued by the defendant in which it contracted to pay $2,500 for the loss of life by the insured, William B. Slaughter, "resulting directly and independently of all other causes from bodily injury sustained by the insured solely through external, violent, and accidental means." The policy contained an exclusion clause, in material part as follows: "The insurance under this policy shall not cover death * * * caused directly or indirectly, wholly or partly, (1) by the intentional act of the Insured or any other person, whether sane or insane * * *." The insured operated a taxi-cab in Selma. An unidentified man requested Slaughter to take him to Smithfield. Later, Slaughter's body was found near the city dump about three miles from Smithfield. His money, his pistol, and the taxicab were gone. This Court said: "All the evidence points to an intentional killing with robbery as the motive. This evidence, viewed in the light of reason and common sense, leaves no basis for a finding of death as the result of accident as the term 'accident' is generally understood. The evidence, circumstantial, of course, offered nothing which even remotely tended to suggest, much less support a finding, that death resulted through accidental means."

The appellant concedes that the burglar or burglars intended to smash the doors of the drug store owned by the plaintiff partnership in order to gain entrance thereto so they might take and carry away cash and merchandise stored therein.

In our opinion, the damage to the premises was not the result of an unavoidable accident within the meaning of the terms of the lease. Consequently, plaintiff partnership was required to make the necessary repairs to the premises if it desired to continue its business. We hold, therefore, that under the terms of the lease and the policy of insurance issued by the defendant to plaintiff partnership, the judgment of the court below should be sustained.

The judgment entered below is

Affirmed.