**WASHINGTON HOUSING AUTH. v. N.C. HOUSING AUTHORITIES**

[130 N.C. App. 279 (1998)]

Haywood and that National did have a duty to defend Foster in Ms. Haywood's action against him. Accordingly, we affirm the entry of summary judgment in this matter.

Affirmed.

Judges LEWIS and McGEE concur.

———————————

WASHINGTON HOUSING AUTHORITY, Plaintiff v. NORTH CAROLINA HOUSING AUTHORITIES RISK RETENTION POOL, Defendant

No. COA97-877

(Filed 21 July 1998)

## 1. Insurance— construction of policy—local government risk pool

Policies or coverage documents issued to members by risk pools such as defendant (a local government risk pool) are subject to the same standard rules of construction as traditional insurance policies issued by insurance companies to their customers.

## 2. Insurance— duty to defend—comparison test

The trial court correctly granted summary judgment for plaintiff in a declaratory judgment action to determine a right to a defense under a local government risk pool contract where the owner of a low-income housing complex managed by plaintiff, a member of the pool, brought an action which included allegations of property damage and negligent management. To determine whether an insurer has a duty to defend, the court must compare the complaint with the policy to see whether the allegations describe facts which appear to fall within the coverage; here, the coverage document specifically covers property damage including "contractual property damage" and "premises-operations," and each of the claims alleges property damage and seeks relief for the physical injury which plaintiff allegedly caused.

**3. Insurance— property damage—exclusion—custody or control of insured**

The trial court correctly granted summary judgment for plaintiff in a declaratory judgment action to determine whether plaintiff has a right to a defense to an action alleging that plaintiff mismanaged a low-income housing complex. Although defendant-risk pool argues that the damage was not covered pursuant to an exclusion for property in the care, custody, or control of the insured, the coverage document purports to provide coverage for property damage but to exclude property in the care of the insured, an ambiguity resolved in favor of plaintiff. Moreover, the property was not in plaintiff's exclusive custody or control; others, such as tenants, were in possessory control of portions of the premises.

**4. Insurance— coverage—duty to defend—definition of occurrence**

The trial court properly determined in a declaratory judgment action that defendant-risk pool had a duty to provide plaintiff-housing manager a defense to litigation by the owner of the low-income housing complex alleging negligent mismanagement and property damage. Although defendant contends that the alleged conduct was not an occurrence as defined in the coverage document because it was not an accident, "occurrence" has been interpreted to include unexpected and unintended events from the viewpoint of the insured. While plaintiff's attempts to manage and maintain the property with plumbing, pest control and grounds keeping were intentional, the resulting damage was not.

Appeal by defendant from order entered 29 April 1997 by Judge Jerry R. Tillett in Beaufort County Superior Court. Heard in the Court of Appeals 26 February 1998.

*Ward and Smith, P.A., by Kenneth R. Wooten, for plaintiff-appellee.*

*Root & Root, P.L.L.C., by Allan P. Root, for defendant-appellant.*

MARTIN, John C., Judge.

Plaintiff brought this action seeking a declaratory judgment determining defendant's obligations to provide coverage and a defense to litigation brought against plaintiff by Runyon Creek

Limited Partnership (Runyon Creek). The underlying action arises out of a 10 October 1990 contract between plaintiff and Runyon Creek, in which plaintiff agreed to "manage and maintain" a low-income apartment housing complex owned by Runyon Creek. Plaintiff managed the apartments for three years and terminated the contract on 31 October 1993. On 21 December 1994, Runyon Creek brought suit against plaintiff alleging several failures during the three year management period including property damage, negligent management of the apartments, managing the apartments without a real estate broker's license, and administering pesticides without a license.

Plaintiff was a member of defendant North Carolina Housing Authorities Risk Retention Pool (NCHARRP), a local government risk pool formed pursuant to G.S. § 58-23-5 (1994), "to pool retention of their risks for property losses and liability claims and to provide for the payment of such losses of or claims made against any member of the pool on a cooperative or contract basis with one another . . . ." Upon institution of the Runyon Creek suit, plaintiff contacted defendant, contending it was entitled to coverage and a defense to the suit. Defendant initially declined coverage, but employed counsel to defend plaintiff subject to a reservation of rights. After reviewing information provided by Runyon Creek in discovery, defendant withdrew its defense of plaintiff.

Plaintiff then brought this declaratory judgment action in which it sought to require defendant to provide a defense to the Runyon Creek suit. The trial court granted summary judgment for plaintiff, declaring that defendant provides coverage for plaintiff "for the claims presented in said underlying suit," and that defendant has a duty to defend the suit and a duty to pay on behalf of plaintiff "all sums which it may or shall become legally obligated to pay as damages in the [suit]." Defendant appeals, contending it does not owe plaintiff a duty of defense to the Runyon Creek litigation. We affirm.

[1] In construing the provisions of an insurance policy, any ambiguities in the policy must be resolved in favor of the insured, *Southeast Airmotive Corp. v. U. S. Fire Ins. Co.*, 78 N.C. App. 418, 337 S.E.2d 167 (1985), *disc. review denied*, 316 N.C. 196, 341 S.E.2d 583 (1986), and, wherever possible, the policy will be interpreted in a manner "which gives, but never takes away, coverage." *Nationwide Mut. Fire Ins. Co. v. Allen*, 68 N.C. App. 184, 190, 314 S.E.2d 552, 555, *disc. review denied*, 311 N.C. 761, 321 S.E.2d 142 (1984). Exclusionary

clauses are not favored and are construed against the insurer, in favor of coverage. *W & J Rives, Inc. v. Kemper Ins. Group*, 92 N.C. App. 313, 374 S.E.2d 430 (1988), *disc. review denied*, 324 N.C. 342, 378 S.E.2d 809 (1989). This rule exists because the insurer prepares the policy and chooses the language. *Southeast Airmotive* at 420, 337 S.E.2d at 169.

Defendant argues, however, that these standard rules of construction do not apply to the present situation because it is not a traditional insurance company and the policy at issue here is a local government risk pool policy, where "the member housing authorities themselves agreed on the policy document," rather than a standard commercial insurance policy. Thus, defendant argues, plaintiff was not "sold" a policy of insurance; rather, it participated in establishing the terms and conditions of coverage within the pool. We reject defendant's argument.

Article 23 of Chapter 58 of the General Statutes authorizes the formation of local government risk pools. Under the statutory scheme, such a risk pool is operated by a board of trustees elected by its membership. N.C. Gen. Stat. § 58-23-10. This board of trustees, rather than the member housing authorities, establishes the terms and conditions of coverage within the pool. *Id.* Plaintiff had no opportunity to participate in the drafting of the language used in the NCHARRP coverage document; in fact, the coverage document adopted by defendant's board of trustees was the "standard ISO form" for commercial liability coverage, which is the same commercial coverage sold by insurance companies to their customers. Therefore, we hold that policies or coverage documents issued by risk pools such as defendant to their members are subject to the same standard rules of construction as traditional insurance policies issued by insurance companies to their customers.

[2] To determine whether an insurer has a duty to defend its insured, the court must "compare the complaint with the policy to see whether the allegations describe facts which appear to fall within the insurance coverage. The trial court generally must avoid going beyond the pleadings to ascertain the facts as they actually are, which determine ultimate liability." *Waste Management of Carolinas, Inc. v. Peerless Ins. Co.*, 72 N.C. App. 80, 84, 323 S.E.2d 726, 730 (1984), *reversed on other grounds*, 315 N.C. 688, 340 S.E.2d 374 (1986) (*Waste Management I*). " '[T]he insured has a right to a defense whenever the allegations show a *potential* that liability will

be established within the insurance coverage,' and the complaint contains 'no allegation of facts which would *necessarily* exclude coverage.' " *Id., quoting Travelers Indem. Co. v. Dingwell*, 414 A.2d 220, 226-7 (Me. 1980). "[W]here a complaint contains multiple theories of recovery, some covered by the policy and others excluded by it, the insurer still has a duty to defend." *Id.* at 85, 323 S.E.2d at 730.

Applying the comparison test to the Runyon Creek complaint, we hold Runyon Creek's allegations fall within the coverage provided by defendant. The NCHARRP coverage document specifically covers property damage, including that resulting from "contractual property damage" and "premises-operations." Property damage is defined under the policy as:

> (1) physical injury to or destruction of tangible property which occurs during the policy period, including the loss of use thereof at any time resulting therefrom, or (2) loss of use of tangible property which has not been physically injured or destroyed provided such loss of use is caused by an occurrence during the policy period.

Each of Runyon Creek's claims allege property damage and seek relief for the physical injury which plaintiff allegedly caused the apartments. Runyon Creek asserts that the property damage to the apartments was caused by: (1) plaintiff's breach of contract, (2) negligence, (3) negligence *per se* for violations of the statutes regarding licensing for real estate agents and licensing for termite pest control applicators, and (4) unfair and deceptive trade practices (a claim which was subsequently voluntarily dismissed pursuant to a settlement agreement). Under the comparison test, Runyon Creek's property damage allegations fall within the coverage for "Contractual Property Damage" in the policy.

[3] Defendant next asserts that coverage of Runyon Creek's claims was excluded pursuant to an exclusion in the NCHARRP coverage document which excluded from its coverage damage to "property in the care, custody or control of the insured or as to which the insured is for any purpose exercising physical control." Defendant argues that because plaintiff had "care, custody or control" of the Runyon Creek property which was damaged, the damage was not covered by the policy. We disagree.

In *Southeast Airmotive, supra*, a cargo plane owned by the plaintiff was carrying negotiable instruments belonging to Wachovia Bank.

The plane crashed, damaging the negotiable instruments. The plaintiff was insured under a policy which contained a "care, custody or control" exclusion. Defendant insurance company denied coverage for the loss of the instruments pursuant to this exclusion, and plaintiff sought a declaratory judgment requiring coverage. The trial court granted summary judgment for the plaintiff-insured and this Court affirmed, rejecting defendant-insurer's argument that the "care, custody and control" exclusion applied. We held that an ambiguity existed where the policy contained a "care, custody or control" exclusion, but elsewhere provided coverage for "damages because of injury to or destruction of property." *Id.* at 420, 337 S.E.2d at 169. Such an ambiguity must be construed in favor of the insured, since a reasonable person in the insured's position would have expected coverage:

> When language used in an insurance policy is ambiguous and is reasonably susceptible of differing constructions, it must be given the construction most favorable to the insured, since the insurance company prepared the policy and chose the language. The test in deciding whether the language is plain or ambiguous is what a reasonable person in the position of the insured would have understood it to mean, and not what the insurer intended. Exclusions from liability are not favored, and are to be strictly construed against the insurer. When the coverage provisions of a policy include a particular activity, but that activity is later excluded, the policy is ambiguous, and the apparent conflict between coverage and exclusion must be resolved in favor of the insured.

*Id.* at 420, 337 S.E.2d at 169.

Similarly, in the present case, the NCHARRP coverage document purports to provide coverage for property damage but subsequently seeks to exclude from such coverage property in the "care, custody or control" of the insured. Following *Southeast Airmotive*, we must resolve this ambiguity in favor of plaintiff. Moreover, even if no ambiguity existed, we would decline to hold the exclusion applicable where, as here, the property was not in plaintiff's exclusive custody or control and others, such as tenants, were in possessory control of portions of the premises. *See National Mutual Insurance Company v. McMahon & Sons, Inc.*, 177 W.Va. 734, 356 S.E.2d 488 (1987); *Interstate Fire and Casualty Co. v. Baker*, 294 Ala. 11, 310 So.2d 868 (1975).

**[4]** Defendant also contends the conduct alleged in the Runyon Creek complaint is not an "occurrence" as defined by the NCHARRP coverage document. To come within the coverage provided by the NCHARRP coverage document, the damage alleged by Runyon Creek must be caused by an "occurrence," defined as "an accident, including continuous or repeated exposure to conditions, which results in bodily injury or property damage neither expected nor intended from the standpoint of the insured." "Occurrence" has been interpreted by our Supreme Court to include "events that are unexpected and unintended as viewed from the standpoint of the insured." *Waste Management of Carolinas, Inc. v. Peerless Ins. Co.*, 315 N.C. 688, 695, 340 S.E.2d 374, 379, *reh'g denied*, 316 N.C. 386, 346 S.E.2d 134 (1986) *(Waste Management II)*. The test should be "a subjective one, from the standpoint of the insured, and not an objective one asking whether the insured 'should have' expected the resulting damage," *Waste Management I* at 87, 323 S.E.2d at 731 (1984), i.e., whether the resulting damage was unexpected or unintended, not whether the act itself was unintended. An "expected or intended" exclusion applies only "if the resulting injury as well as the act were intentional." *Nationwide Mut. Fire Ins. Co. v. Banks*, 114 N.C. App. 760, 763, 443 S.E.2d 93, 95 (1994), *disc. review denied*, 337 N.C. 695, 448 S.E.2d 530 (1994).

In *Waste Management II, supra*, the plaintiff trash collector intentionally dumped waste materials into a landfill for several years, and the materials leached into the groundwater beneath it. The insurer refused coverage and argued on appeal, under the same definition of "occurrence" as in this case, that the intentional dumping did not constitute an "occurrence." *Id.* The Supreme Court rejected this argument and said that it was not the intentional dumping, but the unintended, unexpected leaking into the groundwater which constituted an "occurrence" for the purpose of insurance coverage. *Id.*

Similarly, in this case, the damages alleged by Runyon Creek were caused by "occurrences." Runyon Creek alleged that plaintiff caused serious damage to the apartments through "faulty" repair of plumbing leaks which "ruined floors and walls," inadequate attempts at termite control which caused "termite infestations which have caused severe damage," and inadequate management of the grounds which resulted in "undue and excessive accumulations of trash, debris and weeds." While plaintiff's actions taken in an attempt to manage and maintain the property with plumbing, pest control and grounds keeping were intentional, the resulting damage to the prop-

erty occasioned thereby was not. Therefore, the conduct alleged by Runyon Creek constituted an "occurrence" under the policy. Thus, we hold the allegations of the Runyon Creek complaint came within the coverage provided by the policy and the trial court properly determined defendant had a duty to provide plaintiff with a defense to the Runyon Creek litigation.

Defendant's remaining assignments of error have been resolved by a settlement agreement reached between plaintiff and defendant and we need not address them.

The judgment of the trial court is affirmed.

Affirmed.

Judges LEWIS and MARTIN, Mark D., concur.