HOLZ-HER U.S., INC., Plaintiff v. UNITED STATED FIDELITY AND GUARANTY COMPANY, Defendant

No. COA99-1602

(Filed 19 December 2000)

**Insurance— commercial general liability coverage—no duty to defend in lawsuit—no "occurrence"**

Defendant insurer, which provided commercial general liability insurance coverage for plaintiff and agreed to defend plaintiff in any litigation in which an occurrence and either bodily injury or property damage are allegedly involved, does not have a duty to defend plaintiff in a lawsuit brought against plaintiff in Texas for fraudulent misrepresentations, breach of contract, and deceptive trade practices stemming from an alleged leasing agreement between plaintiff and a third party, because: (1) the ultimate focus is on the injury and whether it was expected or intended, rather than upon the act and whether the act was intended; (2) the insurance policy defined an "occurrence" as an accident, including continued or repeated exposure to substantially the same general harmful conditions; and (3) the underlying Texas lawsuit did not involve an "occurrence" since plaintiff's refusal to lease equipment to a newly-formed company after already allegedly agreeing to do so was substantially certain to cause delays and other consequential business injuries.

Appeal by plaintiff from order entered 12 October 1999 by Judge Claude S. Sitton in Mecklenburg County Superior Court. Heard in the Court of Appeals 8 November 2000.

*Parker, Poe, Adams & Bernstein, L.L.P., by Josephine H. Hicks and John E. Grupp, for plaintiff-appellant.*

*Wilson & Iseman, L.L.P., by Urs R. Gsteiger, for defendant-appellee.*

LEWIS, Judge.

This appeal involves the issue of whether defendant United States Fidelity & Guaranty Company ("USF&G") had a duty to defend plaintiff Holz-Her U.S., Inc. ("Holz-Her") in a lawsuit brought against Holz-Her in Texas. We conclude that defendant had no such duty.

On 14 February 1996, South Bay Industries ("South Bay") and Ralph Durden filed a complaint against, among others, Holz-Her for fraudulent misrepresentations, breach of contract, and deceptive trade practices stemming from an alleged leasing agreement between South Bay and Holz-Her. At the time of the suit, USF&G provided commercial general liability insurance coverage for Holz-Her. Under the terms of the insurance contract, USF&G agreed to defend Holz-Her in any litigation in which Holz-Her was alleged to have caused "bodily injury" or "property damage" as the result of an "occurrence." USF&G refused to defend Holz-Her in the suit, claiming that the Texas lawsuit involved neither an "occurrence" nor "bodily injury" or "property damage." Holz-Her incurred $213,422 in legal expenses defending the suit and eventually settled with South Bay for $190,000. Holz-Her thereafter instituted this cause of action to recover $403,422 (the legal expenses plus the settlement cost) from USF&G for its refusal to defend in the Texas lawsuit. The trial court granted summary judgment in favor of USF&G, and Holz-Her now appeals.

In determining whether an insurer has a duty to defend the underlying lawsuit, our courts employ the so-called "comparison test." *Smith v. Nationwide Mut. Fire Ins. Co.*, 116 N.C. App. 134, 135, 446 S.E.2d 877, 878 (1994). That test requires us to read the pleadings in the underlying suit side-by-side with the insurance policy to determine whether the alleged injuries are covered or excluded. *Id.* The duty to defend is thus measured by the facts alleged in the pleadings. *Waste Management of Carolinas, Inc. v. Peerless Ins. Co.*, 315 N.C. 688, 691, 340 S.E.2d 374, 377 (1986).

> When the pleadings state facts demonstrating that the alleged injury is covered by the policy, then the insurer has a duty to defend, whether or not the insured is ultimately liable. Conversely, when the pleadings allege facts indicating that the event in question is not covered, and the insurer has no knowledge that the facts are otherwise, then it is not bound to defend.

*Id.* The ultimate focus, then, is on the facts that are pled, not how the claims are characterized. *See, e.g., Eubanks v. State Farm Fire and Casualty Co.*, 126 N.C. App. 483, 488-89, 485 S.E.2d 870, 873 (refusing to distinguish between claims for intentional infliction of emotional distress and negligent infliction of emotional distress in analyzing a duty to defend provision because the same alleged facts were used to

support both claims), *disc. review denied*, 347 N.C. 265, 493 S.E.2d 452 (1997).

As stated previously, the insurance policy here obligated USF&G to defend Holz-Her in any suit in which it was alleged to have caused "bodily injury" or "property damage" as the result of an "occurrence." Thus, USF&G was only obligated to defend suits in which (1) an "occurrence" is allegedly involved *and* (2) either "bodily injury" or "property damage" is allegedly involved. We only address the issue of "occurrence" as described in the policy as neither "bodily injury" nor "property damage" are relevant in this case.

Under the insurance policy, an "occurrence" is defined as "an accident, including continued or repeated exposure to substantially the same general harmful conditions." Although "accident" is not further defined in the policy, that term is nontechnical in nature; thus it will be given the same meaning it usually receives in ordinary speech. *Waste Management*, 315 N.C. at 694, 340 S.E.2d at 379. According to its ordinary meaning, an accident is " 'an unforeseen event, occurring without the will or design of the person whose mere act causes it; an unexpected, unusual, or undesigned occurrence.' " *Waste Management*, 315 N.C. at 694, 340 S.E.2d at 379 (quoting *Tayloe v. Indemnity Co.*, 257 N.C. 626, 627, 127 S.E.2d 238, 239-40 (1962)). Whether injuries are accidental and thus satisfy the definition of an "occurrence" depends upon whether they were expected or intended from the insured's point of view. *Id.* at 696, 340 S.E.2d at 380.

On appeal, the parties have focused upon the alleged *acts* involved in the underlying lawsuit. Specifically, they have focused on whether the acts resulting in the injury were allegedly negligent or intentional. This is an improper focus. The ultimate focus is on the *injury*, i.e., whether it was expected or intended, not upon the act and whether it was intended. *Washington Housing Auth. v. N.C. Housing Authorities*, 130 N.C. App. 279, 285, 502 S.E.2d 626, 630 (1998). Even intentional acts can trigger a duty to defend, so long as the injury was "not intentional or substantially certain to be the result of the intentional act." *N.C. Farm Bureau Mut. Ins. Co. v. Stox*, 330 N.C. 697, 709, 412 S.E.2d 318, 325 (1992).

With this background in mind, we now look to South Bay's complaint in the underlying lawsuit to determine whether it alleged an occurrence. In particular, it alleged the following. South Bay was a newly-formed company set up to manufacture certain wood compo-

nents for furniture. To get its business under way, it sought to lease certain equipment from Holz-Her needed to manufacture these components. AT&T would provide the necessary financing for the lease. After receiving South Bay's lease application, financial statements, and business plans, Holz-Her agreed that it would lease the equipment upon South Bay's payment of a one percent commitment fee to AT&T. South Bay submitted the one percent fee. In reliance upon Holz-Her's representations, South Bay negotiated further contracts with other companies for the construction of buildings needed to house the leased equipment and borrowed $880,000 as a result. Subsequently, Holz-Her began to impose additional requirements upon South Bay before it would lease the necessary equipment. South Bay tried to accommodate these new demands, but Holz-Her ultimately refused to lease the equipment. As a result, Ralph Durden, South Bay's majority owner, was forced to sell off much of his majority ownership interest in order to pay off the $880,000 loan. Furthermore, South Bay was forced to lease the equipment from elsewhere, causing delays in the start-up of its business.

Based upon these allegations, we hold that the underlying Texas lawsuit did not involve an "occurrence" within the meaning of the insurance policy. The business injuries alleged here were either expected or substantially certain to occur. A refusal to lease equipment to a newly-formed company after already allegedly agreeing to do so, even from the viewpoint of Holz-Her, was substantially certain to cause South Bay delays and other consequential business injuries.

In reaching this result, we find the case of *Henderson v. U.S. Fidelity & Guaranty Co.*, 124 N.C. App. 103, 476 S.E.2d 459 (1996), *aff'd*, 346 N.C. 741, 488 S.E.2d 234 (1997), to be instructive. In that case, the underlying cause of action involved alleged misrepresentations and fraudulent concealment about the existence of water problems on certain property caused by a severely-flooded drainage area. *Id.* at 105, 476 S.E.2d at 460. In holding that the underlying action did not involve an "occurrence," this Court reasoned:

> Notwithstanding Hicks' assertions that he did not intend or anticipate his misrepresentations to injure or damage plaintiffs, such purposeful and intentional acts were so substantially certain to cause injury and damage as to infer an intent to injure as a matter of law. Accordingly, we hold that any bodily injury or property damage sustained by plaintiff as a result of Hicks'

intentional conduct was not caused by an occurrence within the insuring agreements contained in the USF&G and Great American policies.

*Id.* at 111, 476 S.E.2d at 464. Here, as in *Henderson,* Holz-Her's alleged misrepresentations were substantially certain to cause South Bay the business injuries at issue. We therefore can infer an intent to injure as a matter of law. As a result, no "occurrence" was involved and USF&G had no duty to defend. *See also State Bancorp, Inc. v. United States Fidelity & Guar. Ins. Co.*, 483 S.E.2d 228 (W. Va. 1997) (per curiam) (holding that defendant had no duty to defend in a suit involving the alleged refusal of a financing company to extend $75,000 in credit after initially agreeing to do so because no "occurrence" was involved). We therefore affirm the trial court's entry of summary judgment in favor of USF&G.

Affirmed.

Judges McGEE and HORTON concur.