BRIAN DAVIS, Plaintiff-Appellee v. JOSEPH DIBARTOLO, ARRCS, INC., ARRCS, INC. d/b/a ANNIE'S OLD FASHIONED TRATTORIA AND PIZZERIA, MONTGOMERY DEVELOPMENT CAROLINA CORP., S.V. CENTER, LLC, MEL DeSHA d/b/a MEL'S PLUMBING & ELECTRIC CO., ROGER ALAN GIBSON d/b/a GIBSON PLUMBING AND THE TOWN OF CHAPEL HILL, A NORTH CAROLINA MUNICIPALITY, DEFENDANTS-APPELLANTS

No. COA05-222

(Filed 21 February 2006)

**Immunity— sovereign—building inspection—insurance coverage**

Defendant town waived sovereign immunity by its purchase of liability insurance and the trial court did not err by denying the town's motion to dismiss a claim for a negligent building inspection arising from an accident in a restaurant with an "unrestrained" deep-fat fryer. In determining whether plaintiff's injuries were caused by an occurrence under the insurance policy, the focus should be on whether plaintiff's damages were unexpected and unintended rather than on the precedent negligent acts of the building inspector.

Appeal by defendant Town of Chapel Hill from order entered 22 November 2004 by Judge Wade Barber in Superior Court, Orange County. Heard in the Court of Appeals 14 November 2005.

*Battle, Winslow, Scott & Wiley, P.A., by Marshall A. Gallop, Jr.; and Heidi G. Chapman, PLLC, by Heidi G. Chapman, for plaintiff-appellee.*

*Little & Little, PLLC, by Cathryn M. Little, for defendant-appellant, Town of Chapel Hill.*

McGEE, Judge.

Brian Davis (plaintiff) filed a complaint on 11 June 2004 alleging he was injured on 14 June 2003 while working as a bartender at ARRCS, Inc. d/b/a Annie's Old Fashioned Trattoria and Pizzeria in Chapel Hill, North Carolina. Plaintiff alleged that various non-appealing defendants created a dangerous condition by installing a gas-powered deep fat fryer, a Pitco Friolator Model #35C (the fryer), in contravention to the architect's plans and the installation instructions. Plaintiff filed an amendment to the complaint on 12 July 2004, alleging that he slipped on the unprotected floor of Annie's Old Fashioned Trattoria and Pizzeria on 14 June 2003 while working there as a bartender. Plaintiff further alleged he fell and slid towards the fryer. Plaintiff alleged he struck the fryer feet first, causing the "unrestrained" fryer to topple over onto him, spilling hot grease on plaintiff's torso, arms and legs. Plaintiff alleged he sustained second and third degree burns.

Plaintiff also made several allegations specifically against the Town of Chapel Hill (defendant). Plaintiff alleged defendant was grossly negligent because defendant's employees in its building inspections department failed to properly inspect the construction of Annie's Old Fashioned Trattoria and Pizzeria with respect to the placement and installation of the fryer.

Defendant filed motions to dismiss plaintiff's complaint and amendment to the complaint pursuant to N.C. Gen. Stat. § 1A-1, Rule 12(b)(1) and Rule 12(b)(6) on 2 August 2004. In support of its motions, defendant argued that plaintiff did not allege any waiver of defendant's sovereign immunity by purchase of liability insurance by defendant. Defendant also contended that it was denied liability coverage for plaintiff's claim by its insurance carrier and that defendant had not purchased any other form of liability insurance.

The trial court granted plaintiff's motion to amend his complaint to allege the existence of defendant's applicable liability insurance, if such insurance existed, in an order filed 13 September 2004. The trial

court also ordered defendant to "produce complete copies of all liability insurance policies that have any conceivable coverage in this case," and deferred ruling on defendant's motions to dismiss.

Defendant provided plaintiff with, *inter alia*, a certified copy of its general liability insurance policy for the coverage period 1 July 2002 through 1 July 2003. Plaintiff filed a second amendment to his complaint on 29 September 2004, alleging that defendant had liability insurance that was applicable to this case and that defendant waived any governmental immunity by its purchase of insurance.

Plaintiff subsequently filed a motion for leave to file a third amendment to his complaint, which the trial court granted. Plaintiff filed a third amendment to his complaint on 16 November 2004, amending two paragraphs of the complaint.

Defendant filed renewed motions to dismiss plaintiff's complaint under Rule 12(b)(1) and Rule 12(b)(6) on 2 November 2004, again raising the defense of sovereign immunity. The trial court denied defendant's motions to dismiss in an order filed 22 November 2004, finding that defendant waived sovereign immunity by the purchase of general liability insurance coverage for the period 1 July 2002 through 1 July 2003. Defendant appeals.

Defendant argues that it has sovereign immunity from plaintiff's action. Specifically, defendant argues plaintiff's alleged injuries were not caused by an occurrence, as defined by its general liability insurance policy, but rather were caused by the intentional, discretionary acts of its building inspector, acts for which defendant has sovereign immunity. Plaintiff argues, and the trial court found, that defendant waived sovereign immunity by its purchase of general liability insurance coverage for the period 1 July 2002 through 1 July 2003. Plaintiff argues his injuries were caused by an occurrence, which was covered by defendant's general liability insurance policy, and that defendant waived its sovereign immunity to the extent of that coverage.

The denial of a 12(b)(6) motion to dismiss for failure to state a claim is immediately appealable where the motion raises the defense of sovereign immunity. *Anderson v. Town of Andrews*, 127 N.C. App. 599, 601, 492 S.E.2d 385, 386 (1997). However, in *Data Gen. Corp. v. Cty. of Durham*, 143 N.C. App. 97, 545 S.E.2d 243 (2001), our Court stated that "an appeal of a motion to dismiss based on sovereign immunity presents a question of personal jurisdiction rather than subject matter jurisdiction[.]" *Id.* at 100, 545 S.E.2d at 245-46. Therefore, our Court held that the denial of a 12(b)(1) motion to dis-

miss for lack of subject matter jurisdiction is not immediately appealable, even where the defense of sovereign immunity is raised. *Id.* at 100, 545 S.E.2d at 246. Accordingly, we only review the trial court's denial of defendant's 12(b)(6) motion. "The question before a court considering a motion to dismiss for failure to state a claim is whether, if all the plaintiff's allegations are taken as true, the plaintiff is entitled to recover under some legal theory." *Toomer v. Garrett*, 155 N.C. App. 462, 468, 574 S.E.2d 76, 83 (2002), *appeal dismissed and disc. review denied*, 357 N.C. 66, 579 S.E.2d 576 (2003)).

"It is a fundamental rule that sovereign immunity renders this state, including counties and municipal corporations herein, immune from suit absent express consent to be sued or waiver of the right of sovereign immunity." *Data Gen. Corp.*, 143 N.C. App. at 100, 545 S.E.2d at 246. However, a city or town may waive its sovereign immunity pursuant to N.C. Gen. Stat. § 160A-485(a) (2005), which provides:

> Any city is authorized to waive its immunity from civil liability in tort by the act of purchasing liability insurance. Participation in a local government risk pool pursuant to Article 23 of General Statute Chapter 58 shall be deemed to be the purchase of insurance for the purposes of this section. Immunity shall be waived only to the extent that the city is indemnified by the insurance contract from tort liability.

An insurance policy is a contract and should be interpreted so as to effectuate the intent of the parties at the time the policy was issued. *Gaston County Dyeing Machine Co. v. Northfield Ins. Co.*, 351 N.C. 293, 299, 524 S.E.2d 558, 563 (2000). To the extent possible, every word and provision of an insurance policy should be given effect. *Id.* However, ambiguous provisions and words should be construed in favor of the insured. *Id.* at 299-300, 524 S.E.2d at 563. An insurer's unilateral determination of the scope of its insurance policy's coverage is not binding. *Herndon v. Barrett*, 101 N.C. App. 636, 641, 400 S.E.2d 767, 770 (1991).

Defendant's general liability insurance contract provides that the Interlocal Risk Financing Fund of North Carolina "will pay those sums that [defendant] becomes legally obligated to pay as compensatory damages because of 'bodily injury' or 'property damage' to which this insurance applies." Defendant's general liability insurance policy further provides that "[t]his insurance applies to 'bodily injury' and 'property damage' only if: (1) The 'bodily injury' or 'property damage' is caused by an 'occurrence' that takes place in the 'coverage ter-

ritory[.]' " Defendant's general liability insurance policy defines an "occurrence" as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." Finally, defendant's general liability insurance policy excludes from coverage " '[b]odily injury' or 'property damage' expected or intended from the standpoint of any insured."

Defendant's general liability insurance policy does not define the term "accident." However, as our Court has recently noted: " 'Nontechnical words are to be given their meaning in ordinary speech unless it is clear that the parties intended the words to have a specific technical meaning.' " *McCoy v. Coker*, 174 N.C. App. 311, 315, 620 S.E.2d 691, 694 (2005) (quoting *Allstate Ins. Co. v. Chatterton*, 135 N.C. App. 92, 95, 518 S.E.2d 814, 816-17 (1999), *disc. review denied*, 351 N.C. 350, 542 S.E.2d 205 (2000)). In *McCoy*, our Court quoted Black's Law Dictionary's definition of an accident in the context of insurance policies as " ' "an occurrence which is unforeseen, unexpected, extraordinary, either by virtue of the fact that it occurred at all, or because of the extent of the damage." ' " *McCoy*, 174 N.C. App. at 315, 620 S.E.2d at 694 (quoting Black's Law Dictionary 15 (8th ed. 2004) (citation omitted)).

In *McCoy*, the plaintiff filed suit against a county and its building inspector for property damage and personal injuries allegedly sustained when the building inspector failed to properly inspect work performed on the plaintiff's house and improperly issued a certificate of occupancy. *McCoy*, 174 N.C. App. at 312, 620 S.E.2d at 692-93. The defendants' motion for summary judgment based on sovereign immunity was denied because the defendants waived sovereign immunity by the purchase of insurance. *Id.* at 313, 620 S.E.2d at 693.

The language of the general liability insurance policy at issue in *McCoy* was substantially the same as the language of the policy at issue here. The policy at issue in *McCoy* covered damages for "bodily injury" or "property damage" caused by an "event," which the policy defined as an "accident, including continuous or repeated exposure to substantially the same general harmful conditions." *Id.* at 314-15, 620 S.E.2d at 694. As discussed above, our Court defined "accident" according to its ordinary meaning. *Id.* at 315, 620 S.E.2d at 694.

In *McCoy*, our Court analogized several cases in which the insurance policies at issue defined "occurrence" as " 'an accident, including continuous or repeated exposure to conditions, which results in bodily injury or property damage *neither expected nor intended from*

*the standpoint of the insured.'* " *McCoy*, 174 N.C. App. at 316, 620 S.E.2d at 694-95 (quoting *Waste Management of Carolinas, Inc. v. Peerless Ins. Co.*, 315 N.C. 688, 694, 340 S.E.2d 374, 379 (1986)). In so doing, our Court in *McCoy* focused upon "whether the *damages incurred* were expected or intended by the insured in light of the conduct in question[]" rather than on whether the underlying conduct was accidental. *McCoy*, 174 N.C. App. at 316, 620 S.E.2d at 695 (emphasis added). Our Court stated the applicable test for determining whether the plaintiff's damages were "neither expected nor intended from the standpoint of the insured[,]" and thus were caused by an "accident":

> "[t]he test should be a 'subjective one, from the standpoint of the insured, and not an objective one asking whether the insured "should have" expected the resulting damage,' i.e., whether the resulting damage was unexpected or unintended, not whether the act itself was unintended. An 'expected or intended' exclusion applies only 'if the resulting injury as well as the act were intentional.' "

*McCoy*, 174 N.C. App. at 316, 620 S.E.2d at 695 (quoting *Washington Housing Auth. v. N.C. Housing Authorities*, 130 N.C. App. 279, 285, 502 S.E.2d 626, 630, *disc. review denied*, 526 S.E.2d 477 (1998)).

In *McCoy*, we applied the test set forth in *Washington Housing Authority* to hold that while the building inspector's actions in inspecting the plaintiff's property and issuing a certificate of occupancy were intentional, the plaintiff's resulting property damage and bodily injuries were neither intended nor expected. *McCoy*, 174 N.C. App. at 316-17, 620 S.E.2d at 695. Accordingly, the plaintiff's damages were caused by an "accident," and therefore an "event," which was covered by the defendants' insurance policy. Our Court held the defendants waived sovereign immunity to the extent of the applicable insurance coverage. *Id.*

The insurance policy at issue in *McCoy* did not contain the following language within its definition of occurrence: "[W]hich results in bodily injury or property damage neither expected nor intended from the standpoint of the insured[.]" *McCoy*, 174 N.C. App. at 317, 620 S.E.2d at 695. Similarly, the policy at issue in this case does not include, within its definition of "occurrence," the language quoted above. However, defendant's general liability insurance policy does exclude from coverage " '[b]odily injury' or 'property damage' expected or intended from the standpoint of any insured."

In *Holz-Her U.S., Inc. v. U.S. Fid. & Guar. Co.*, 141 N.C. App. 127, 539 S.E.2d 348 (2000), this Court also applied the test set forth in *Washington Housing Authority* to the determination of whether damages were caused by an "occurrence." *Id.* at 129-30, 539 S.E.2d at 350-51. In *Holz-Her*, our Court cogently set forth the proper focus of the inquiry:

> The ultimate focus is on the *injury*, i.e., whether it was expected or intended, not upon the act and whether it was intended. Even intentional acts can trigger a duty to defend, so long as the injury was "not intentional or substantially certain to be the result of the intentional act."

*Holz-Her*, 141 N.C. App. at 129, 539 S.E.2d at 350 (internal citations omitted).

In the case before us, as in *McCoy*, *Holz-Her* and *Washington Housing Authority*, in determining whether plaintiff's alleged injuries were caused by an "occurrence," the focus should be on whether plaintiff's damages were unexpected and unintended. In other words, we should not focus on the nature of defendant's alleged precedent acts of negligence in determining whether plaintiff's alleged damages were caused by an 'occurrence." Plaintiff alleged he was.

> severely injured, when he slipped on the unprotected floor while walking towards the fryer. He fell and slid towards the fryer, feet first. His feet struck the unrestrained Pitco Friolator Model #35C, causing it to tip over. The fryer toppled over on top of him, spilling hot grease over his torso, arms and legs. Plaintiff . . . sustained second and third degree burns over his torso, arms and legs, while performing his job duties as a bartender.

Such a sequence of events clearly was "unforseen" and "unexpected" pursuant to Black's Law Dictionary's definition of an "accident." Additionally, plaintiff's damages were unexpected and unintended from defendant's standpoint. If anything, plaintiff's damages in the present case were more unexpected than the plaintiff's damages in *McCoy* where the plaintiff was the homeowner who suffered damages as a result of the defendants' negligent inspection of her home. In the present case, it was clearly unintended and unexpected that a third party occupant of the building would suffer damages as a result of defendant's allegedly negligent inspection. Therefore, we hold that

defendant's general liability insurance policy covers plaintiff's alleged injuries and defendant has waived its sovereign immunity to the extent of the coverage. Accordingly, the trial court did not err in denying defendant's motion to dismiss.

Defendant's reliance on *City of Wilmington v. Pigott*, 64 N.C. App. 587, 307 S.E.2d 857 (1983), *disc. review denied*, 310 N.C. 308, 312 S.E.2d 650 (1984) is unpersuasive. In *Pigott*, the City of Wilmington's chief building inspector informed the plaintiffs that two greenhouses on their property did not conform to the city building code. *Id.* at 587, 307 S.E.2d at 858. The building inspector gave the plaintiffs thirty days in which to remove the greenhouses and the plaintiffs complied by removing them. *Id.* Subsequently, the building inspector informed the plaintiffs that if the greenhouses were less than 400 square feet, they would be allowed. The plaintiffs then filed suit against the City of Wilmington for damages for the loss of their greenhouses, alleging their greenhouses met the requirements of the building code. *Id.*

The City of Wilmington had purchased liability insurance, but its insurance company denied liability for the plaintiffs' claims. *Id.* The City of Wilmington filed a motion for summary judgment which the trial court denied. *Id.* at 588, 307 S.E.2d at 858. The City of Wilmington then filed an action for declaratory judgment and the trial court found that the City of Wilmington's insurance policy covered the plaintiffs' claims for damages. *Id.*

The insurance policy at issue in *Pigott* was similar to the policy in the case before us in that it covered damages for "bodily injury" or "property damage" caused by an "occurrence," which it defined as an "accident." *Id.* at 588, 307 S.E.2d at 858-59. In reversing the trial court, the Court held as follows:

> We cannot label [the building inspector's] order to the [plaintiffs] to remove their greenhouses an "accident." The decision did not happen by chance and was not unexpected, unusual or unforseen. It was certainly intended by the City that [the] chief building inspector . . . would exercise his discretion to make these sorts of decisions as he saw fit. While [the building inspector] may have mistakenly or erroneously interpreted the Wilmington building code, his conduct did not amount to an "accident." Since there was no showing at trial that the act of the City constituted an "accident," we find that there was no

"occurrence" within the meaning of the multi-peril insurance policy.

*Id.* at 589, 307 S.E.2d at 859.

In determining the plaintiffs' injuries were not caused by an occurrence, the Court appeared to focus on the nature of the precedent acts of the building inspector rather than on the damages suffered by the plaintiffs. However, in light of *McCoy, Holz-Her* and *Washington Housing Authority*, this was an improper focus. We find the test articulated in *McCoy, Holz-Her* and *Washington Housing Authority* to be more persuasive on the facts in the present case. Additionally, even if we were unable to conclusively determine whether plaintiff's damages were caused by an "accident," we are required to construe any ambiguities within an insurance policy in favor of the insured. *McCoy*, 174 N.C. App. at 317, 620 S.E.2d at 695; *Gaston County Dyeing Machine Co.*, 351 N.C. at 299-300, 524 S.E.2d at 563.

Defendant also attempts to argue the trial court erred by denying defendant's motions to dismiss based upon a lack of proximate cause between defendant's alleged negligence and plaintiff's alleged injuries. However, because defendant failed to assign error to this issue in the record on appeal, we do not review this argument. N.C.R. App. P. 10(a).

Affirmed.

Chief Judge MARTIN and Judge ELMORE concur.