LIGGETT GROUP INC. and Brooke Group Holding, Inc., Plaintiffs Below, Appellants,

v.

ACE PROPERTY AND CASUALTY INSURANCE COMPANY, Continental Casualty Company, Federal Insurance Company, Hartford Accident & Indemnity Co., the Home Indemnity Co., the Home Insurance Co., International Insurance Co., National Union Fire Insurance Co. of Pittsburgh, PA., Royal Indemnity Co., Royal Insurance Co. of America, Seaboard Surety Co., St. Paul Mercury Insurance Co., Transportation Insurance Co., Twin City Fire Insurance Co., and Zurich–American Insurance Co., Defendants Below, Appellees.

No. 512, 2001.

Supreme Court of Delaware.

Submitted: April 9, 2002.
Decided: May 16, 2002.

21. *See supra* notes 6–7.

Michael D. Goldman, John E. James, and Richard L. Horwitz, Potter Anderson & Corroon LLP, Wilmington, Delaware; Robert L. Carter, Andrew M. Reidy (argued), Catherine J. Serafin, Kathrin V. Smith, Stephen M. Goldman, Matthew J. Schlesinger, and Kurt J. Hamrock, McKenna & Cuneo, LLP, Washington, D.C., for Appellants.

Richard K. Herrmann and Mary B. Matterer, Blank Rome Comisky & McCauley, LLP, Wilmington, Delaware; Gary D. Centola (argued), Alan C. Eagle (argued), Michael S. Gollub, and Christopher J. McGuire, Rivkin Radler, LLP, Uniondale, NY, for Appellees Royal Indemnity Company and Royal Insurance Company of America.

Kevin Gross and Carmella P. Keener, Rosenthal, Monhait, Gross & Goddess, P.A., Wilmington, Delaware; Rodney L. Eshelman (argued), Sarah M. Shields and Don Willenburg, Carroll, Burdick & McDonough, LLP, San Francisco, CA; Stuart Philip Ross, Thomas T. Locke, Richard J. Pratt, Karen H. Ventrell, and Charles A. Jones, Ross, Dixon & Bell, LLP, Washington, D.C., for Appellees Continental Casualty Company and Transportation Insurance Company.

B. Wilson Redfearn and Danielle Kathleen Yearick, Tybout, Redfearn & Pell, Wilmington, Delaware; John D. Aldock, Mark S. Raffman (argued) and Matthew M. Hoffman, Shea & Gardner, Washington, D.C., for Appellee Federal Insurance Company.

Donald E. Reid, Morris, Nichols, Arsht & Tunnell, Wilmington, Delaware; Norman C. Kleinberg and George A. Tsougarakis, Hughes, Hubbard & Reed, LLP, New York City, for Appellees Hartford Accident & Indemnity Company and Twin City Fire Insurance Company.

Stuart B. Young, Young, Conaway, Stargatt & Taylor, LLP, Wilmington, Delaware; Robert L. Ciociola, Litchfield Cavo, Lynnfield, MA, for Appellee the Home Insurance Company, both individually and as successor in interest to The Home Indemnity Company.

John D. Balaguer, White & Williams, LLP, Wilmington, Delaware; Paul R. Koepff, O'Melveny & Myers, LLP, New York City, for Appellee International Insurance Company.

Anthony J. Flynn and Timothy J. Houseal, Young, Conaway, Stargatt & Taylor, LLP, Wilmington, Delaware; Theodore J. Boutrous, Jr., Gibson, Dunn & Crutcher LLP, Los Angeles, CA, and Wayne A. Schrader, Gibson, Dunn & Crutcher, LLP, Washington, D.C., for Appellee National Union Fire Insurance Co. of Pittsburgh, PA.

Henry E. Gallagher, Jr., Connolly Bove Lodge & Hutz, LLP, Wilmington, Delaware; Steven D. Pearson, Scott M. Seaman and Steven J. Ciszewski, Meckler Bulger & Tilson, Chicago, IL, for Appellee Zurich American Insurance Company.

Before WALSH, HOLLAND, and STEELE, Justices.

WALSH, Justice:

In this interlocutory appeal, we review a Superior Court decision granting summary judgment in favor of the insurers in a dispute over whether liability insurance coverage is available for tobacco-related injuries. The appellant, Liggett Group, Inc. ("Liggett"), brought suit against several of its general commercial liability insurers seeking coverage, and asserting a duty to defend, for hundreds of tobacco product liability lawsuits in which it is a defendant. The Superior Court, relying on various policy exclusions, ruled the insurance policies at issue did not provide coverage for the underlying tobacco claims, and that the insurers therefore had no duty to defend Liggett in those suits. We agree and affirm.

I

Liggett is a Delaware corporation that manufactures tobacco products in North Carolina and distributes throughout the United States. Liggett has been sued in more than one thousand cases filed by plaintiffs seeking to hold Liggett liable for a broad range of personal injuries and property damage arising out of the use of tobacco. The underlying complaints assert a variety of legal theories including negligent defect, negligent design, negligent failure to warn, negligent misrepresentation, intentional infliction of emotional distress, conspiracy, and concerted action. Liggett filed the present action against thirty-three insurance companies to determine its rights and the insurers' obligations under more than one hundred liability insurance policies sold to it (and/or its parent companies) by the various insurance companies from 1970 through 2000.

Liggett seeks defense coverage for the underlying tobacco lawsuits filed against it throughout the United States.

Partial summary judgment was granted in favor of the Primary Commercial General Liability Insurers based on the tobacco exclusions contained in their policies. There are seven "Primary CGL Insurers," with years of alleged coverage, who are appellees here, Transportation Insurance Company (1979–1981), Federal Insurance Company (1981–1985), National Union Fire Insurance Company (1985–1986), Zurich Insurance Company (1986), The Home Insurance Company (1986–1988), Hartford Accident and Indemnity Company (1988–1990) [1] and Twin City Fire Insurance Group (1990–1993). The Superior Court instructed the parties to choose up to twenty representative complaints from the underlying litigation, as a basis for testing the duty to defend. These complaints were brought on behalf of plaintiffs alleged to have developed one or more diseases as a result of smoking. In many cases, the plaintiffs seek to recover not just for the physical symptoms of their disease, but for mental distress and loss of consortium caused by the disease. Other tobacco claims are brought by third-party payors, such as state governments and health insurers, seeking reimbursement of costs incurred to treat people with tobacco-related illnesses.

Although the language varies, each of the Primary CGL insurance policies at issue included a broad exclusion for tobacco-related health claims. The tobacco exclusions exclude coverage for claims: "arising, or allegedly arising from the handling, use or ingestion of any tobacco product;" "due in whole or in part ... to tobacco or products containing tobacco;" "based upon ... consumption or use of tobacco products;" "allegedly arising out of the use,

1. Liggett has dismissed its appeal against Twin City Fire Insurance Company, but only

with respect to policies issued for the years 1997–2000.

over a period of days, weeks, months, or longer, of any tobacco product;" and "caused, or alleged to have been caused in whole or in part, by use of any tobacco or tobacco products." Additionally, each of the policies at issue contain separate coverage for "bodily injury," "property damage," and "personal injury." The tobacco exclusions apply only to "bodily injury" and, in some cases, "property damage."

The Superior Court also granted summary judgment in favor of Royal Indemnity Company and Royal Insurance Company of America (collectively "Royal"), based on the products-hazard exclusion in its policies, which precluded a duty to defend Liggett's claims. Liggett purchased a series of successive CGL insurance policies from Royal that provided coverage for bodily injury that took place from 1993–1997. The policies exclude coverage for "bodily injury or property damage included within the products-completed operations hazard." The products-completed operations hazard encompasses "all bodily injury and property damage ... arising out of 'your product'." "Your product" is defined as "any goods or products, other than real property, manufactured sold, handled, distributed or disposed of by [ ] You ...."

Summary judgment was also granted in favor of Continental Casualty Company, ("Continental"), because the underlying complaints do not allege "advertising injury," which would be covered by Continental's Media Special Perils ("MSP") policies. Continental issued five annual MSP liability insurance policies covering Liggett between 1981 and 1986[2]. The 1981 and 1983 MSP policies state, in relevant part, that Continental agrees to pay "all loss which the Insured becomes obligated to pay as damages because of liability for claims caused by or resulting from injury

arising out of ... Libel, slander, or other forms of defamation ... committed in the utterance or dissemination of matter broadcast, published or otherwise exhibited or displayed during the policy period in advertising, publicity or promotion of any kind ...." The words "emotional distress" do not appear in either policy. The 1984 MSP policy is similar to the earlier policies, but adds the following language to the category of enumerated offenses: "Libel, slander, or other forms of defamation, including but not limited to infliction of emotional distress." Finally, the 1985 MSP policy includes an extended defamation perils endorsement, which provides coverage for claims arising out of "[a]ny form of defamation or other tort related to disparagement or harm to the character, reputation or feelings of any natural person or organization, including but not limited to, libel, slander, product disparagement, trade libel, prime [*sic*] facie tort, infliction of emotional distress ...."

Finally, the Superior Court granted partial summary judgment in favor of Royal, holding that Liggett was not a Named Insured under an umbrella CGL policy issued by Royal to Intercontinental Hotels Corporation. The umbrella policy contains no tobacco or products-hazard exclusion and instead broadly defines its "personal injury" coverage. The umbrella policy lists the "Named Insured" as Intercontinental Hotels Corporation. Endorsement no. 1 to the policy amends the Named Insured to include several corporations, including Grand Metropolitan Public Limited Company ("Grand Met"). Further, Named Insured is defined in the policy as "the Named Insured stated in Item 1 of the Declarations including any subsidiary company and any other company coming

---

2. The 1982 policy was not at issue below, and is not included in this appeal.

under the Named Insured's control of which it assumes active management."

Liggett is not a direct subsidiary of Grand Met because there are several intervening layers of corporate control. Grand Met is a huge international conglomerate, with at least 126 subsidiaries. The layers of control are as follows: (1) Grand Met wholly-owned Grand Met Holdings, Inc., (2) Grand Met Holdings, Inc. wholly-owned Grand Metropolitan (USA) Holdings, (3) which wholly-owned Grand Met USA, Inc., and (4) Grand Met USA, in turn, wholly-owned Liggett. Intercontinental Hotels is the wholly-owned subsidiary of Grand Met Holdings, Inc. The various Grand Met companies are holding companies. Each entity, however, is separate and has its own CEO and managing director. Intercontinental Hotels, who has many of its own subsidiaries, ran its businesses and procured insurance completely separate from Liggett.

## II

■ Our review of the Superior Court's grant of summary judgment is *de novo. Arnold v. Society for Savings Bancorp, Inc.*, 650 A.2d 1270, 1276 (Del.1994). Further, the Superior Court's interpretation of the insurance policies applicable to this case is a determination of law, also subject to *de novo* review. *National Union Fire Ins. Co. v. Fisher*, 692 A.2d 892, 895 (Del.1997).

At the outset, we note that the Superior Court determined that this contract dispute is governed by the law of North Carolina. Because no party has appealed that ruling, we will proceed to examine Liggett's claims under the law of that State. Insurers are entitled to summary judgment if they can "show that the claimant cannot prove the existence of an essential element of [its] claim or cannot surmount an affirmative defense which would

bar the claim." *Little v. National Service Indus., Inc.*, 79 N.C.App. 688, 340 S.E.2d 510, 512 (1986); *see also Oakley v. Little*, 49 N.C.App. 650, 272 S.E.2d 370, 372 (1980) (stating "summary judgment allows quick and final disposition of claims where there is no real question as to whether plaintiff should recover, or where the defendant has established a complete defense").

Liggett argues that the Superior Court erred by interpreting the duty to defend too narrowly while broadly construing the policy exclusions. Insurers counter that the policies clearly do not provide coverage for tobacco claims and that Liggett is attempting to pull isolated language from the policies and strain it to create unwarranted exceptions.

■ Generally, an "insurer's duty to defend the insured is broader than its obligation to pay damages..." and is measured by the facts as alleged in the pleadings in the action against the insured. *Waste Management v. Peerless Ins. Co.*, 315 N.C. 688, 340 S.E.2d 374, 377 (1986). Conversely, when the pleadings allege facts indicating that the event in question is not covered, and the insurer has no knowledge that the facts are otherwise, then it is not required to defend. *Waste Management*, 340 S.E.2d at 377. In determining whether an insurer has a duty to defend the underlying lawsuit, North Carolina courts employ the so-called "comparison test." *Smith v. Nationwide Mut. Fire Ins. Co.*, 116 N.C.App. 134, 446 S.E.2d 877, 878 (1994). That test requires the court to read the pleadings in the underlying suit side-by-side with the insurance policy to determine whether the alleged injuries are covered or excluded. *Id.* When the pleadings state facts demonstrating that the alleged injury is covered by the policy, then the insurer has a duty to defend, whether or not the insured is

ultimately liable. The critical focus, then, is on the facts that are pled, not how the claims are characterized. *Holz–Her U.S., Inc. v. U.S. Fidelity and Guar. Co.*, 141 N.C.App. 127, 539 S.E.2d 348, 350 (2000).

■ While the duty to defend might be broad, it is not so broad as to expose insurance companies to risks for which they did not bargain, and clearly excluded from their policies. *See Waste Management*, 315 N.C. 688, 340 S.E.2d 374 (affirming grant of summary judgment in favor of insurer); *Holz–Her U.S.*, 141 N.C.App. 127, 539 S.E.2d 348 (affirming grant of summary judgment in favor of insurer); *Smith*, 116 N.C.App. 134, 446 S.E.2d 877 (affirming dismissal of action against insurer). After identifying various allegations in the underlying complaints, and comparing them to the policies at issue, the Superior Court ultimately concluded that the complaints all sought recovery for deleterious health effects, both physical and mental, caused by use of tobacco products, which were clearly excluded from the policies. In interpreting the insurance policies, the court was mindful that the goal of construction is to arrive at the intent of the parties when the policy was issued. *Woods v. Nationwide Mut. Ins. Co.*, 295 N.C. 500, 246 S.E.2d 773, 777 (1978).

We agree with the trial court that the underlying complaints, fairly read, allege injuries arising from the use of Liggett's tobacco products. Such allegations are clearly excluded from the primary CGL policies, absolving the insurers of any duty to defend. Furthermore, the parties clearly intended this result. Liggett itself did not contend otherwise until recently, for it has been representing to courts throughout the country that it did not have any liability insurance that would cover defense of the underlying suits. The insurers, for their part, calculated premiums based on the assumption that any tobacco-related health claims against Liggett would not be covered due to the "tobacco exclusions" and "products-hazard exclusions" in their policies. An interpretation of the insurance policies at issue which includes "litigation insurance" for these claims would contravene the intent of the parties at the time of contracting, and award Liggett something for which it did not bargain.

## III

■ Liggett attacks the trial court's failure to distinguish between "bodily injury," "sickness" and "disease." Liggett points out that the tobacco exclusions vary in scope and that some bar claims of "sickness or disease," but not "bodily injury," while others bar claims of "disease," but not "bodily injury" or "sickness." Liggett argues that the underlying complaints contain allegations of bodily injury that are not allegations of any "disease" or "sickness," such as migraine headaches, chronic back pain, tooth decay, poor circulation, and pregnancy complications. The Superior Court found that "[t]he definitions of 'disease' and 'sickness' broadly encompass all 'unhealthy conditions' of the human body. By contrast, a burn, a cut, a broken bone, or any other sudden traumatic injury would be a bodily injury that is not a disease." *Liggett Group Inc. v. Affiliated FM Insurance Co., et al.*, 2001 WL 1456774, *6 (Del.Super.2001) (*citing Eagle–Picher Indus., Inc. v. Liberty Mut. Ins. Co.*, 682 F.2d 12, 19 (1st Cir.1982) (stating that "bodily injury is most easily thought of as an injury caused by external violence or impact")). In reaching this conclusion, the court relied upon nonlegal dictionaries for the ordinary meanings of the terms, as permitted by the North Carolina Supreme Court. *Woods*, 246 S.E.2d at 777.

Liggett's attempt to define sickness, disease, and bodily injury as stages of the same injury would eviscerate the plain meaning of the tobacco exclusions, making every excluded disease subject to coverage up to the point that it is clinically diagnosed. Such an interpretation is unreasonable. Equally unreasonable is Liggett's argument that sickness is defined separately from disease as a "condition that interferes with one's daily activities." If that were the case, the tobacco exclusions would be meaningless since every disease, *i.e.*, cancer and emphysema, at some point, does interfere with one's usual activities. Liggett would have this Court read the tobacco exclusions as excluding only claims that allege conditions that have manifested symptoms to the point of being clinically diagnosed, but not yet interfering with the patient's usual activities. The unambiguous policy language cannot sustain such an interpretation.

 Liggett further claims that the policies at issue all contain personal injury coverage, separate and apart from the bodily injury coverage that contains the tobacco exclusions. Liggett claims that there are personal injury allegations in the underlying complaints, such as mental injury, anguish, and humiliation, which are covered by the CGL policies. The Superior Court held that coverage for personal injury claims does not encompass mental and emotional injury arising from an excluded bodily injury, sickness, or disease. *Liggett Group Inc.*, 2001 WL 1456774, *7.

 Under North Carolina law, "personal injury" coverage under a Commercial General Liability policy is limited to coverage for those torts specifically enumerated in the policy itself. *Russ v. Great American Ins. Companies*, 121 N.C.App. 185, 464 S.E.2d 723, 727 (1995). The policies list identical offenses under their respective personal injury liability coverage:

"false arrest, detention or imprisonment, or malicious prosecution, libel, slander, defamation or violation of right of privacy, wrongful entry or eviction or other invasion of right of private occupancy," as well as "injury to the feelings or reputation of any person" and "injury to intangible property sustained by an organization as a result of false eviction, malicious prosecution, libel, slander, or defamation . . . ."

 These torts do not encompass the "mental anguish" claims for which Liggett seeks coverage. *See Wake Stone Corp. v. Aetna Casualty and Surety Co.*, 995 F.Supp. 612 (E.D.N.C.1998) (holding that use of term "arising out of" in describing personal injury covered by CGL policy did not broaden coverage beyond specifically enumerated torts to encompass statutory unfair trade practices claim, despite fact that such claim might "arise out of" same facts as libel and slander, which were specifically covered). Instead, the mental or emotional health claims made by the plaintiffs all stem from their physical infirmities, which arise from their use of tobacco products. Furthermore, the basis for the tobacco liability claims is negligence, essentially negligence in the manufacture and distribution of a harmful product. The policies at issue clearly do not extend coverage to negligence claims. The "injury to feelings" of "any person" language, upon which Liggett relies, must be read in context. *Gaston County Dyeing Mach. Co. v. Northfield Ins. Co.*, 351 N.C. 293, 524 S.E.2d 558, 563 (2000) (noting that the various terms of an insurance policy are to be "harmoniously construed"). In this case, it must be read with the preceding list of torts encompassing, broadly, libel, slander, and defamation. It cannot be read as an independent extension of coverage to all mental anguish allegations in products liability, or negligence, actions.

Liggett further argues that Royal's products-hazard exclusion does not apply to bodily injury claims that arise from causes other than Liggett's product, such as allegations of second hand smokers, third party payors, and government action complaints. The Superior Court held that these allegations "arise out of" the use of Liggett's tobacco products, relying on this Court's opinion in *Eon Labs Manufacturing, Inc. v. Reliance Insurance Co.,* 756 A.2d 889 (Del.2000), which held that claims against a manufacturer to recover for injuries from the fen-phen drug combination arose out of the manufacturer's product and were within the exclusion of coverage for the products-completed operations hazard in a CGL insurance policy and the fact that the claims also involved the products of others did not negate the application of the "arising out of" language. Although Liggett attempts to avoid the effect of *Eon Labs* by arguing that it was not decided under North Carolina law, this Court specifically noted that its decision was based upon "general insurance contract principles." *Id.* at 892.

The arguments rejected in *Eon Labs* are strikingly similar to those alleged by Liggett in this case. There, as here, there were allegations that the defendant's product, combined with other products, caused bodily injury. This Court concluded that the "combination claims are not—as Eon claims—'claims seeking to hold Eon liable for injuries from other companies' products.' Such a contention distorts the essential fact that in all the underlying cases it is the involvement or presence of Eon's phentermine (including misrepresentations and failure to warn, etc.) that is the basis of the fen-phen suits." *Id.* at 893. North Carolina law does not require a different result. In *State Capital* (and its progeny), the North Carolina Supreme Court held that "the sources of liability which are excluded from homeowners policy cover-

age must be the sole cause of the injury in order to exclude coverage under the policy." *State Capital,* 350 S.E.2d at 73. In this case, the Superior Court held that the use of tobacco products was the sole cause of the alleged injuries, thus precluding coverage. We agree. The underlying complaints name Liggett as a defendant because they allege that *Liggett's* product caused injury.

Additionally, the *State Capital* line of cases involved motor vehicle or homeowners insurance, both of which invoke important public policy and consumer protection goals. This case deals with a commercial policy entered into between sophisticated parties. North Carolina courts seem to recognize this distinction and are not as protective of commercial insureds. *See Wake Stone Corp.,* 995 F.Supp. at 617 (holding that use of term "arising out of" in describing personal injury covered by CGL policy did not broaden coverage).

### IV

Liggett next argues that the Superior Court erred in determining that the underlying complaints did not allege damage "arising out of" its advertising, thus evoking its coverage under the Media Special Perils policy with Continental. Liggett claims the Superior Court used the wrong causation standard in making its determination, requiring that the injury arise out of the four corners of the advertising rather than just being a natural and reasonable consequence of it. Continental asserts that the MSP was only intended to cover libel, slander, or other forms of defamation committed against competitors in advertising, not the claims of injured consumers.

Liggett contends that the underlying complaints allege facts that constitute the tort of infliction of emotional distress, di-

rectly caused by Liggett's advertising. Although each of the complaints enumerate either intentional or negligent infliction of emotional distress as a cause of action, the gravamen of these complaints is that Liggett concealed the fact that its products were addictive and, instead, affirmatively represented that they were safe. *See Holz–Her*, 539 S.E.2d at 350 (noting that the focus is on the facts that are pled, not how the claims are characterized). The plaintiffs, in turn, relied on the misrepresentations of Liggett to their detriment. The further claim that Liggett's advertising directly targeted youth or induced the plaintiffs to use its product could be said of all advertising—indeed, inducement to purchase is the purpose of all commercial advertising. Thus, although the plaintiffs use the "magic words" of emotional distress, their claims revolve around fraud and misrepresentation. Further, the emotional distress alleged is a result of the physical injuries incurred from use of Liggett's product.

 Even the most inclusive Continental MSP policy, by its terms, requires a causal connection between the offense for which coverage is sought and the insured's advertising activities. The coverage is for "claims arising out of" infliction of emotional distress, "committed in the utterance or dissemination" of Liggett's advertising. Liggett argues that the *State Capital* case stands for the proposition that the infliction of emotional distress claims are covered if they are the "natural and reasonable consequence" of Liggett's advertising. *State Capital Ins. Co. v. Nationwide Mutual Ins. Co.*, 318 N.C. 534, 350 S.E.2d 66 (1986). The language of the opinion belies that proposition, however. The *State Capital* court noted that "the standard of causation applicable to the ambiguous 'arising out of' language . . . is one of proximate cause." *Id.* at 74.

 The Superior Court was correct in its conclusion that in order to invoke coverage, "the advertising alone must be actionable." *Liggett Group Inc. v. Affiliated FM Insurance Co., et al.*, 2001 WL 1456853, *6 (Del.Super.2001). As this Court has noted, the "vast majority of courts have held that claims made pursuant to the advertising injury policy provisions which provide that the injury 'arise out of' or occur 'in the course of' the insured's advertising activities must be supported by a causal connection between that injury and the activities." *ABB Flakt, Inc. v. National Union Fire Ins. Co.*, 731 A.2d 811, 817 (Del.1999). The case of *McDonald's Corp. v. American Motorists Ins. Co.*, interpreting nearly identical policy provisions, is also persuasive. 321 Ill.App.3d 972, 255 Ill.Dec. 67, 748 N.E.2d 771 (2000). The *McDonald's* court held that the media special perils policy at issue provided coverage only if the offense itself was caused by the promotion or advertisement. *Id.* To hold otherwise, as the trial court recognized, would unduly expand the policy to cover all claims relating to a product, simply because it was advertised. *Liggett Group, Inc.*, 2001 WL 1456853, *6, *citing McDonald's*, 255 Ill.Dec. 67, 748 N.E.2d at 779; *Frog, Switch & Mfg. Co. v. Travelers Ins. Co.*, 193 F.3d 742, 751 (3rd Cir.1999) (holding that advertising alone must be actionable).

## V

 The Superior Court held that Liggett is not a "Named Insured" under an umbrella policy issued by Royal. In this appeal, Liggett argues that the court erred in holding that the term "subsidiary" encompasses only direct subsidiaries and that the court ignored both the commonly understood meaning of subsidiary and the North Carolina rules of contract construc-

tion that call for ambiguities to be construed in favor of coverage. Further, Liggett argues, the Superior Court failed to appreciate the effect of the modifier "any" on "subsidiary" and, again, did not recognize the breadth of the duty to defend. Royal contends that the policy was issued to cover hotel operations, and the contracting parties never intended for Liggett, who is six corporate layers down from the actual named insured, Grand Met, to be covered by the policy.

 Because the goal of construction is to arrive at the intent of the parties when the policy was issued, an insurance policy must not be construed piecemeal. *Blake v. St. Paul Fire and Marine Ins. Co.*, 38 N.C.App. 555, 248 S.E.2d 388, 390 (1978), *citing Woods v. Nationwide Mut. Ins. Co.*, 246 S.E.2d at 777. The contract must be examined as a whole. *Id.* Furthermore, "the construction of the policy must not be strained, arbitrary, unnatural, or forced, but rather it should be reasonable, logical, and practical, having reference to the risks and purposes of the entire contract." *Id., citing* 1 Couch on Insurance, 2d Edition, ss 15.10–.17 (1959). Although any ambiguity in the meaning of the words used in the policy must be resolved in favor of the insured, use of the plain, ordinary meaning of a term is the preferred construction. *C.D. Spangler Constr. Co. v. Industrial Crankshaft & Engineering Co.*, 326 N.C. 133, 388 S.E.2d 557, 568 (N.C.1990) (concluding that, absent a limiting definition in the policy, the parties did not intend "damages" to have a specific technical meaning, but rather they intended to use its ordinary meaning).

 In construing the ordinary and plain meaning of disputed terms, the Supreme Court of North Carolina has used "standard, nonlegal dictionaries" as a guide. *C.D. Spangler*, 388 S.E.2d at 568, *citing Jamestown Mut. Ins. Co. v. Nation-wide Mut. Ins. Co.*, 266 N.C. 430, 146 S.E.2d 410, 416 (1966). In this case, the language at issue is the inclusion of "any subsidiary company" within the definition of Named Insured. The American Heritage Dictionary of the English Language 1283 (4th ed.2000) defines subsidiary company as "a company having more than half of its stock owned by another company." *See also* Random House Unabridged Dictionary 1896 (2nd ed.1993) (defining subsidiary company as "a company whose controlling interest is owned by another company"); Webster's Third New International Dictionary 2279 (1993) (a subsidiary company is "a company wholly controlled by another that owns more than half of its voting stock").

 The Superior Court properly construed the Royal insurance policy to cover only those subsidiary companies that are directly owned, or controlled by the actual named insured, Grand Met. Liggett is not a direct subsidiary of Grand Met under this definition. The term subsidiary company is not defined in the policy, thus the parties must have intended it to have its ordinary meaning. Although the term subsidiary may have a different meaning in a corporate law context, its commonly understood meaning, according to leading non-legal dictionaries, is limited to direct subsidiaries. This definition reasonably and logically harmonizes the policy language granting coverage to "any subsidiary company" of Grand Met, with the reality that Grand Met is a holding company with hundreds of direct and indirect subsidiaries worldwide.

Furthermore, construing subsidiary company to mean direct subsidiaries comports with the intent of the contracting parties, Intercontinental Hotels and Royal, that the policy cover hotel, food and lodging operations (not tobacco litigation). This clear intention balances the strong

policy in favor of interpreting ambiguous provisions as affording coverage. *C.f., C.D. Spangler*, 388 S.E.2d at 569. Liggett's argument that the Superior Court's interpretation of subsidiary company implicates general corporate law is off the mark. The court was not directing its holding to a dispute between a corporation and its subsidiary nor to a matter of corporate governance but to the ordinary meaning of a term in an insurance contract between an insurer and an entity enjoying a remote legal relationship with another corporate entity.

The decision of the Superior Court awarding summary judgment to the insurers is affirmed.