# IN THE SUPREME COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| FIRST SOLAR, INC., | § | No. 217, 2021 |
| | § | |
| Plaintiff Below, | § | |
| Appellant, | § | Court Below: Superior Court |
| | § | of the State of Delaware |
| v. | § | |
| | § | |
| NATIONAL UNION FIRST | § | C.A. No. N20C-10-156 (CCLD) |
| INSURANCE COMPANY OF | § | |
| PITTSBURGH, PA and XL | § | |
| SPECIALTY INSURANCE | § | |
| COMPANY, | § | |
| | § | |
| Defendants Below, | § | |
| Appellees. | § | |

Submitted: January 19, 2022
Decided: March 16, 2022

Before **SEITZ**, Chief Justice; **VALIHURA**, **VAUGHN**, **TRAYNOR**, and **MONTGOMERY-REEVES**, Justices, constituting the Court *en Banc*.

Upon appeal from the Superior Court. **AFFIRMED**.

Jennifer C. Wasson, Esquire, Carla M. Jones, Esquire, POTTER ANDERSON & CORROON LLP, Wilmington, Delaware, Adam S. Ziffer, Esquire (*argued*), and Meredith Elkins, COHEN ZIFFER FRENCHMAN & MCKENNA LLP, New York, New York, *Attorneys for Appellant First Solar, Inc*.

Kurt M. Heyman, Esquire (*argued*), Aaron M. Nelson, Esquire, HEYMAN ENERIO GATTUSO & HIRZEL LLP, Wilmington, Delaware, Scott B. Schreiber, Esquire, Arthur Luk, Esquire, Omomah Abebe, Esquire, and Kolya D. Glick, Esquire, ARNOLD & PORTER KAYE SCHOLER LLP, Washington, D.C., *Attorneys for Appellee National Union Fire Insurance Company of Pittsburgh, Pa*.

John C. Phillips, Jr., Esquire, David A. Bilson, Esquire, PHILLIPS MCLAUGHLIN & HALL, P.A., Wilmington, Delaware, Charles C. Lemley, Esquire (*argued*), Kim Melvin, Esquire, and Anna Schaffner, Esquire, WILEY REIN LLP, Washington, D.C., *Attorneys for Appellee XL Specialty Insurance Company.*

**SEITZ**, Chief Justice:

In this appeal we review whether a securities class action and a later follow-on action were related actions, such that the follow-on action was excluded from insurance coverage under later-issued policies. The Superior Court found that the follow-on action was "fundamentally identical" to the first-filed action and therefore excluded from coverage under the later-issued policies. Even though the court applied an incorrect standard to assess the relatedness of the two actions, we affirm nonetheless because under either the erroneous "fundamentally identical" standard or the correct relatedness standard defined by the policies, the later-issued insurance policies did not cover the follow-on action.

I.

A.

According to the allegations of the complaint, First Solar, Inc. ("First Solar") manufactures solar panels and sells photovoltaic ("PV") power plants.[1] First Solar competes in the renewable energy space and has installed PV facilities throughout the world. In March 2012, First Solar stockholders filed a class action lawsuit against the company alleging that it violated federal securities laws by making false

---

[1] Unless otherwise stated, the facts are drawn from the Superior Court's June 23, 2021 opinion, *First Solar, Inc. v. National Union Fire Insurance Company of Pittsburgh, PA and XL Speciality [sic] Insurance Company.*, C.A. No. N20C-10-156, 2021 WL 2563023 (Del. Super. Jun. 23, 2021).

or misleading public disclosures.[2] The parties refer to the original suit as the *Smilovits* Action. The *Smilovits* plaintiffs alleged that from April 30, 2008, to February 28, 2012, First Solar:

> (1) misrepresented that it "had a winning formula for reducing manufacturing costs so rapidly and dramatically as to make solar power competitive with fossil fuels"; (2) "perpetuated [its] fraudulent self-portrayal by concealing and misrepresenting the nature and extent of major manufacturing and design defects in [its] solar modules"; (3) misrepresented its financials; (4) artificially inflated its stock prices; (5) allowed individuals to engage in insider trading; (6) manipulated the cost-per-watt metrics; and (7) understated its expenses in violation of General Accepted Accounting Principles ("GAAP").[3]

National Union Fire Insurance Company of Pittsburgh, PA ("National Union") provided insurance coverage for the *Smilovits* Action under a 2011–12 $10 million "claims made" directors and officers insurance policy.

B.

On June 23, 2015, while the *Smilovits* Action was pending, First Solar stockholders who opted out of the *Smilovits* Action filed what has been referred to as the *Maverick* Action. The *Maverick* Action alleged violations of the same federal securities laws as the *Smilovits* Action, as well as violations of Arizona statutes and claims for fraud and negligent misrepresentation. As summarized by the Superior

---

[2] Specifically, they alleged violations of Section 10(b) and Section 20(a) of the Federal Securities Exchange Act of 1934, the former enforced under SEC Rule 10b-5.
[3] *First Solar*, 2021 WL 2563023, at *1 (citing *Smilovits* Compl.).

4

Court, the plaintiffs in the *Maverick* Action alleged that from May 2011 to December 2011, First Solar:

> (1) misrepresented how close it was to achieving grid parity—"the point at which solar electricity became cost competitive with conventional methods of producing electricity without government subsidies"; (2) concealed defects in First Solar's panels and manufacturing process; (3) concealed problems with First Solar's modules that resulting [*sic*] in increased costs; (4) manipulated the cost-per-watt metrics; (5) misrepresented the value of a pipeline project; (6) falsely represented that it was on track to meet its financial targets; (7) refused to adjust its targets in light of an influx of panels globally; (8) issued false financials that violated GAAP; and (9) artificially inflated its stock price.[4]

When the plaintiffs filed the *Maverick* Action in 2015, First Solar had a $10 million "claims made" policy with National Union for 2014–15 (the "Primary Policy") and a $10 million layer of excess coverage with XL Specialty Insurance Company ("XL Specialty" and the "XL Specialty Policy").[5] The 2014–15 Primary Policy excluded coverage for "Related Claims." A Related Claim is "a Claim alleging, arising out of, based upon or attributable to any facts or Wrongful Acts that are the same as or related to those that were . . . alleged in a Claim made against an

---

[4] *First Solar*, 2021 WL 2563023, at *1.

[5] Given that the XL Specialty Policy follows form with the Primary Policy, we will rely on the Primary Policy's language, as the Superior Court did below. *Id.* at *3 (quoting XL Specialty Policy, § I). A "claims made" policy bars coverage for claims made after the inception date of the policy. *United Westlabs, Inc. v. Greenwich Ins. Co.*, 2011 WL 2623932, at *3 (Del. Super. June 13, 2011), *aff'd,* 38 A.3d 1255 (Del. 2012).

Insured."[6]  And a Related Claim is deemed first made at the time of the previously made claim under the following conditions:

> (b) *Relation Back to the First Reported Claim or Pre-Claim Inquiry*: Solely for the purpose of establishing whether any subsequent Related Claim was first made . . . during the Policy Period or Discovery Period (if applicable), if during any such period:
>
> (1) A Claim was first made and reported in accordance with Clause 7(a) above, then any Related Claim that is subsequently made against an Insured and that is reported to the Insurer shall be deemed to have been first made at the time that such previously reported Claim was first made. . . . Claims actually first made or deemed first made prior to the inception date of this policy . . . are not covered under this policy[.][7]
>
> Applied here, the Related Claim Exclusion bars coverage under the 2014–15

policies if the *Maverick* Action is a Related Claim to the *Smilovits* Action.

C.

At first, First Solar obtained defense coverage for the *Maverick* Action under its 2011–12 policies.  In 2015, First Solar exhausted all coverage under the 2011–12 National Union policy.  Chubb, an excess insurer next in line after the 2011–12 National Union policy, accepted coverage of the *Maverick* Action because "the new Maverick litigation is based on the same facts and circumstances of the previously

---

[6] App. to Opening Br. at A067 (Primary Policy § 13).  A "Wrongful Act," as relevant here, means "any actual or alleged breach of duty, neglect, error, misstatement, misleading statement, omission or act by such Organization, but solely in regard to a Securities Claim."  *Id.* at A069 (Primary Policy § 13).

[7] *Id*. at A050 (Primary Policy § 7).  The Primary Policy as amended is at A129–131 but does not change the relevant language.

6

noticed Smilovits class action complaint," and as such, "[Chubb] treats this matter as a related claim."[8]

Chubb provided coverage for the *Maverick* Action as the litigation progressed. In the *Smilovits* Action, First Solar filed a "Motion to Transfer Related Case" to litigate both Actions before the same judge. It argued that "[t]he substantial overlap in legal and factual issues and the substantial overlap in parties weigh in favor of transferring the Maverick [] Action to this Court."[9] The court granted the motion.[10]

After years of litigation and after incurring over $80 million in defense costs, First Solar settled the *Smilovits* Action on January 5, 2020 for $350 million.[11] All primary and excess insurers under the 2011–12 policies paid their policy limits. Having settled the *Smilovits* Action and exhausted all coverage under the 2011–12 policies, First Solar began to arbitrate a settlement of the *Maverick* Action. It sought coverage under the 2014–15 Primary Policy and the XL Specialty Policy (the "Policies") for the *Maverick* Action. First Solar eventually settled the *Maverick* Action for $19 million without a coverage commitment from National Union or XL Specialty (collectively, the "Insurers"). After the Insurers denied coverage under

---

[8] J.A. to Answering Brs. at B414. The insurer was then known as Federal but has since changed its name.

[9] *Id.* at B078. First Solar later moved to dismiss on the grounds that *Maverick* was the "latest in a series of securities fraud actions" making "nearly identical allegations[,]" but did point out differences similar to the those identified here. *Id.* at B141–43.

[10] *Id.* at B080.

[11] App. to Opening Br. at A397 (Memorandum in Support of First Solar's Motion for Partial Summary Judgment on Relatedness (Trans ID 66293000), filed January 28, 2021).

the Policies, First Solar filed suit in the Superior Court for breach of contract and declaratory relief that the Insurers were obligated to provide coverage under the Policies.

D.

The Superior Court litigation focused on the relatedness of the *Smilovits* and *Maverick* Actions and whether the *Maverick* Action fell within the Primary Policy exclusion for Related Claims. First Solar argued that the *Smilovits* Action and the *Maverick* Action were not sufficiently related because they involved different operative facts—different plaintiffs, conduct, causes of action, and time periods.[12] The Insurers responded that the *Maverick* Action arose out of the *Smilovits* Action and raised the same claims against the same parties in all material respects. As they argued, because the Policies did not cover claims deemed first made before the Primary Policy's inception date, the *Maverick* Action was not covered.[13]

Relying on *Pfizer Inc. v. Arch Insurance Co.*, the Superior Court held that a complaint is "related to" or "aris[es] out of" a previous complaint if the claims are "fundamentally identical."[14] Fundamentally identical lawsuits, according to the

---

[12] *First Solar*, 2021 WL 2563023, at *3.

[13] *Id.* The Insurers also argued coverage was excluded because "(1) the Special Matter Exclusion [which excludes the *Smilovits* Action] applies to the *Maverick* Action; (2) First Solar violated the policies' notice provisions by failing to provide notice to Defendants about the *Maverick* Action; and (3) First Solar violated the policies' consent-to-settle provisions by failing to obtain consent before settling the *Maverick* Action." *Id.*

[14] *Id.* at *4–5 (citing *Pfizer Inc. v. Arch Ins. Co.*, 2019 WL 3306043, at *9 (Del. Super. July 23, 2019)).

8

court, require the "same subject" and "common facts, circumstances, transactions, events, and decisions."[15] The Superior Court previously held that there must be more than "thematic similarities" for complaints to be sufficiently related under similar policy language.[16] This is because the words "arising out of" imply a causal connection.[17]

The Superior Court then found the Actions had "substantial similarities,"[18] and were "fundamentally identical."[19] Among other aspects, the lawsuits stemmed from the same original suit, were against "identical defendants," overlapped in time, contained allegations of the same securities law violations, and relied on the same specific disclosures.[20] Also, the court found that the underlying wrongful conduct—allegedly inflating First Solar's stock price by misrepresenting cost-per-watt metrics and falsifying financial reports—was the same. While there were some differences, including the theory of damages claimed by the *Maverick* plaintiffs, the court held that the differences did not outweigh the similarities. It concluded that the *Maverick*

---

[15] *Id.* at *5 (quoting *United Westlabs*, 2011 WL 2623932, at *11).

[16] *Pfizer*, 2019 WL 3306043, at *10.

[17] *First Solar*, 2021 WL 2563023, at *5 (quoting *Fimbres v. Fireman's Fund Ins. Co.*, 708 P.2d 756, 758 (Ariz. Ct. App. 1985); *Northrop Grumman Innovation Sys., Inc. v. Zurich Am. Ins. Co.*, 2021 WL 347015, at *11 (Del. Super. Feb. 2, 2021), 2021 WL 772312 (Del. Super. Mar. 1, 2021) (certification of interlocutory appeal denied)).

[18] *Id.* at *5.

[19] *Id.* at *6.

[20] *Id.* at *5.

Action was fundamentally identical to the *Smilovits* Action and was excluded as a Related Claim under the Policies.

## II.

On appeal, First Solar argues that the Superior Court ruled incorrectly that the *Smilovits* Action and the *Maverick* Action were fundamentally identical. It claims that the *Maverick* Action focused on grid parity and the company's "Systems Business," as shown by the Action's damage claims and reliance on First Solar's "objective to achieve grid parity with respect to utility-scale solar power plant facilities in the future."[21] By contrast, the *Smilovits* Action focused on "misrepresentations regarding the historical cost of individual solar modules[,]" a temporally and categorically distinct part of the company's business.[22] First Solar contends that the Actions merely share "thematic similarities[,]" not "fundamental identity."[23] Finally, it argues that, even if the claims overlap, parts of the *Maverick* Action seek to recover for separate Wrongful Acts (specific statements and misrepresentations) that are not excluded by the Primary Policy.[24]

The Insurers counter that the *Maverick* Action meets the "fundamentally identical" standard because it is directed to the same Wrongful Act and fraudulent

---

[21] Opening Br. at 27–28.
[22] *Id.*
[23] *Id.* at 34.
[24] *Id.* at 37–38.

10

scheme as the *Smilovits* Action. They argue further that the fundamentally identical standard has been taken out of context and misapplied by the Superior Court.[25] According to the Insurers, the meaning of "related to" should come from the language of the insurance policy. The Insurers also contend that any non-overlapping claims would only be distinct, non-excluded causes of action if the underlying wrongful conduct was different, whereas here the complaints are directed to the same fraudulent scheme.[26] And finally, National Union argues that even if the *Maverick* Action is not barred by relation back, the Specific Matter Exclusion in the Primary Policy independently precludes coverage.[27]

In response to the Insurers' argument directed to the "fundamentally identical" relatedness standard, First Solar contends that *stare decisis* and policy considerations should control but does not dispute that Delaware decisions have substituted a "fundamentally identical" standard for the language of the insurance policies.[28] Instead, it argues that the plain language of the Primary Policy's relatedness standard would render coverage illusory.[29]

---

[25] National Union Answering Br. at 36–39; XL Specialty Answering Br. at 19–20.
[26] National Union Answering Br. at 34–26; XL Specialty Answering Br. at 32–35.
[27] National Union Answering Br. at 44–48. Given the basis for our affirmance, we do not reach this question.
[28] Reply Br. at 1–2; *id.* at 5–8.
[29] *Id.* at 5–7. First Solar also argues in its Reply Brief that the policy provision at issue was merely intended to "bring[] future claims into the Policies' coverage[.]" *Id.* at 21–22. First Solar did not make this argument before the Superior Court or in its Opening Brief, so it is waived. Supr. Ct. R. 8.

11

On appeal, we review "the Superior Court's grant of a motion to dismiss" *de novo*.[30] "We also review the Superior Court's interpretation of an insurance [policy] *de novo*."[31]

## A.

As an initial matter, we agree with the Insurers that the Superior Court's use of the "fundamentally identical" standard to assess the relatedness of the *Smilovits* and *Maverick* Actions disregards the plain language of the insurance policy. The error can be traced to a misunderstanding of a Superior Court decision that addressed the meaning of "arising out of" or "related to" for coverage of "related" complaints and claims.

In *United Westlabs, Inc. v. Greenwich Insurance Co.*, United Westlabs had an ongoing conflict with a third-party, Seacoast, regarding access to a billing system owned and run by Seacoast.[32] United Westlabs contracted with Seacoast to use the system, but Seacoast considered the software a trade secret, and maintained control through remote virtual private network ("VPN") access.[33] After a payment dispute, United Westlabs cut off Seacoast's VPN access to the database.[34] The parties

---

[30] *Difebo v. Bd. Of Adjustment of New Castle Cnty.*, 132 A.3d 1154, 1156 (Del. 2016) (citing *King Constr., Inc. v. Plaza Four Realty, LLC*, 976 A.2d 145, 151 (Del. 2009)).
[31] *ConAgra Foods, Inc. v. Lexington Ins. Co.*, 21 A.3d 62, 68 (Del. 2011) (citing *Pac. Ins. Co. v. Liberty Mut. Ins. Co.*, 956 A.2d 1246, 1254 (Del. 2008)).
[32] *United Westlabs*, 2011 WL 2623932, at *1.
[33] *Id.*
[34] *Id.*

arbitrated the dispute, and United Westlabs later filed for a declaratory judgment that it had not committed copyright infringement and sought to enjoin Seacoast from filing civil claims.[35] The parties settled in 2007, and the claims were dismissed without prejudice. United Westlabs then obtained two insurance policies without disclosing the Seacoast dispute.[36] The "relationship continued to deteriorate" and United Westlabs again terminated Seacoast's VPN access and brought a new claim along the same lines as before, but added a new claim for breach of the 2007 settlement agreement.[37] Seacoast counterclaimed, and United Westlabs sought coverage from its insurers.[38] They denied coverage under policy provisions barring claims "first made" before the inception date of the policies. United Westlabs sued in Delaware Superior Court, seeking damages for the insurers' breach of duty to pay defense costs.[39] The policy language provided that:

> All Wrongful Acts that: (1) take place between the Retroactive Date and the end of the Policy Period of the last Insurance Policy issued by the Company to the Insured; and (2) involve the same or related subject, person, class of person or have common facts or circumstances or involve common transactions, events or decisions, regardless of the number of repetitions, alterations, actions or forms of communication; will be treated under this Policy as one Wrongful Act.[40]

---

[35] *Id.* at *2.
[36] *Id.* at *2–5.
[37] *Id.* at *2, *5.
[38] *Id.* at *5–6.
[39] *Id.*
[40] *Id.* at *10.

The Superior Court reasoned that the first and second claims involved "the same subject and common facts, circumstances, transactions, events, and decisions[.]"[41] Although United Westlabs argued that the separate lawsuits were "'based on separate injuries and events, the [2008 Wrongful Acts] being predicated on discrete instances of unprecedented conduct following a span of two years after the [2006–07 Wrongful Acts,]'" the court found that the complaints covered the same event, and any allegations added in the later claim were merely part of "a continuous series of related acts[.]"[42] Thus, according to the court, the claims were "fundamentally identical[.]"[43] The court ruled that the claims arose from the same Wrongful Act under the policy and the later claim was excluded from coverage.[44]

After the *United Westlabs* decision, later cases picked up the court's "fundamentally identical" observation about the claims in that case and converted it into a standard to assess relatedness under an insurance policy's related claims provision.[45] But as a recent Superior Court decision observed about the error,

---

[41] *Id.* at *11.

[42] *Id.* at *10–11 (alterations in original).

[43] *Id.* at *11 ("UWL's 2006–07 Wrongful Acts and UWL's 2008 Wrongful Acts are fundamentally identical.").

[44] *Id.* at *10–11, 14.

[45] *Med. Depot, Inc. v. RSUI Indem. Co.*, 2016 WL 5539879, at *14 (Del. Super. Sept. 29, 2016) ("The two actions are not fundamentally identical. Mr. Mezzadri's claim does not relate back to the *Swisher* action."); *Pfizer*, 2019 WL 3306043, at *7 ("Conversely, under Delaware law, similar 'relatedness' or 'arising out of' policy language is interpreted as precluding coverage only where two underlying actions are 'fundamentally identical.'" (citing *Med. Depot*, 2016 WL 5539879, at *14; *United Westlabs*, 2011 WL 2623932, at *11–12)).

14

"neither the Delaware Supreme Court nor any other jurisdiction has adopted 'fundamental identity' as the standard governing all relatedness inquiries, regardless of the contractual language at issue."[46]  With all insurance policies, "[t]he scope of an insurance policy's coverage . . . is prescribed by the language of the policy."[47] And absent "ambiguity, Delaware courts interpret contract terms according to their plain, ordinary meaning."[48]  Whether a claim relates back to an earlier claim is decided by the language of the policy, not a generic "fundamentally identical" standard.[49]

## B.

The Primary Policy's Related Claim provision is broad.  A Related Claim is a "Claim alleging, arising out of, based upon or attributable to any facts or Wrongful Acts that are the same as or related to those that were . . . alleged in a Claim made against an Insured."[50]  Thus, the question on appeal is whether the *Maverick* Action

---

[46] *Sycamore Partners Mgmt, L.P. v. Endurance Am. Ins. Co.*, 2021 WL 4130631, at \*11 (Del. Super. Sept. 10, 2021).

[47] *Emmons v. Hartford Underwriters Ins. Co.*, 697 A.2d 742, 745 (Del. 1997) (citing *Rhone-Poulenc Basic Chems. Co. v. American Motorists Ins. Co.*, 616 A.2d 1192, 1195–96 (Del. 1992)).

[48] *Alta Berkeley VI C.V. v. Omneon, Inc.*, 41 A.3d 381, 385 (Del. 2012).

[49] *See, e.g., OptiNose AS v. Currax Pharm., LLC*, 264 A.3d 629 (Del. 2021) (determining what it means for a filing to "relate to or characterize" intellectual property); *Liggett Grp. Inc. v. Affiliated FM Ins. Co.*, 2001 WL 1456871, at \*6 (Del. Super. Sept. 12, 2001), *aff'd sub nom. Liggett Grp., Inc. v. Ace Prop. & Cas. Ins. Co.*, 798 A.2d 1024 (Del. 2002) (holding that symptoms or consequences causally linked to smoking are "related to" smoking even if not directly caused by the act of smoking); *Eon Labs Mfg., Inc. v. Reliance Ins. Co.*, 756 A.2d 889, 892 (Del. 2000) (affirming a Superior Court judgment that all the allegations against the plaintiff "'come within the scope of the *arising out of* language,' including 'claims related to the use of [plaintiff's drug].'" (citations omitted)).

[50] App. to Opening Br. at A067 (Primary Policy § 13).

15

raises Claims that "aris[e] out of, [are] based upon or attributable to any facts or Wrongful Acts that are the same as or related to" the *Smilovits* Action.[51]

The *Maverick* Action is a Related Claim under the Primary Policy. Both Actions are based on the same alleged misconduct—First Solar's misrepresentations about the cost-per-watt of its solar power. A side-by-side comparison of the two complaints makes the point:

| Category | *Smilovits* Action | *Maverick* Action |
|---|---|---|
| Defendants: | First Solar, Inc.; Michael J. Ahearn; Robert J. Gillette; Mark R. Widmar; Jens Meyerhoff; James Zhu; Bruce Sohn; and David Eaglesham. (App. to Opening Br. at A422) | Same. (A176) |
| Time period: | April 2008 to February 2012. (A425) | May 2011 to December 2011. (A214) |
| Overall theory: | "Defendants' fraudulent scheme . . . artificially inflated the price of First Solar publicly traded securities[.]" (A428) | "Defendants' fraudulent scheme to fraudulently inflate the price of First Solar Stock[.]" (A242) |
| Sampling of relevant statements/evidence: | February 24 conference call. (A484, A525) | February 24 conference call. (A220–22) |
| | May 3 conference call. (A487) | May 3 conference call. (A225–26) |
| | Pacific Crest Conference on August 8, 2011. (A526) | Pacific Crest Conference on August 8, 2011. (A232) |
| | Cost issues and overruns at PV plant Copper Mountain. (A480) | Cost issues and overruns at PV plant Copper Mountain. (A202, A217) |

---

[51] National Union cites cases where "arising out of" has been interpreted to mean "some meaningful linkage between the two conditions imposed in the contract[,]" *Pac. Ins. Co. v. Liberty Mut. Ins. Co.*, 956 A.2d 1246, 1257 (Del. 2008), and "'originating from,' 'having its origin in,' 'growing out of,' [] 'flowing from[,]'" or "'incident to, or having connection with[,]'" *Goggin v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.*, 2018 WL 6266195, at *4 (Del. Super. Nov. 30, 2018) (citations omitted). National Union Answering Br. at 21. But it does not ask us to adopt "meaningful linkage" as the standard for the provision at issue.

| | | |
|---|---|---|
| | GAAP violations. (A431, A497–A528) | GAAP violations. (A210–11, A220) |
| | Understating "manufacturing excursion" (significant issues in manufacturing PV panels). (A425, A431–34, A440, A449–51) | Understating "manufacturing excursion" (significant issues in manufacturing PV panels). (A185–91, A211) |
| | Degradation effects. (A434–35, A442–48) | Degradation effects. (A191–98) |
| | Grid parity. (A529,[52] A534–35) | Grid parity. (*passim*) |
| Claimed damages: | Violations of §10(b) and §20(a) of the Securities Exchange Act of 1934 and SEC Rule 10(b)(5). (A556-7) | Violations of §10(b) and §20(a) of the Securities Exchange Act of 1934 and SEC Rule 10(b)(5); common law fraud; A.R.S. § 44-1999(B); A.R.S. § 44-1991(A)(2)-(3);[53] negligent misrepresentation. (A250-58) |

First Solar argues that the *Smilovits* Action focused on cost-per-watt representations while the *Maverick* Action focused on grid parity, which was understood to be a future objective. It also draws a distinction between the "Components Business" alleged in the *Smilovits* Action (individual PV cells or solar modules) and the "Systems Business" alleged in the *Maverick* Action (the PV facilities built by First Solar).[54] These distinctions, according to First Solar, show

---

[52] In addition, as we have discussed, the *Smilovits* Action's emphasis on cost-per-watt is simply another way of looking at the issue of grid parity: "Because First Solar's cost-per-watt was far from the level necessary to compete with conventional sources of electricity without the benefit of subsidies, defendants and analysts were keenly aware of the need for First Solar to maintain a constant and rapid trend toward reducing their cost-per-watt." App. to the Opening Br. at A529 (Smilovits Complaint at ¶ 198).

[53] As we discuss below, the Arizona law counts are substantially similar to the sections of the federal Securities Exchange Act of 1934.

[54] Opening Br. at 2–3; *id.* at 25–28. National Union and XL Specialty contend that this is an argument raised for the first time on appeal and should be considered waived. National Union

that the *Smilovits* Action centered on "historical performance" representations while the *Maverick* Action dealt with predictions of grid parity, or "forward-looking statements."[55]

These differences are not, however, meaningful to the relatedness inquiry. While there might be minor differences—like the disparity between a certain cost-per-watt level and grid parity—the Actions focus on First Solar's misrepresentations about the cost of solar power.[56] Both Actions allege violations of the same federal securities laws from this wrongful conduct.[57] In both cases, plaintiffs allege that First Solar made material misrepresentations regarding its solar power capabilities as part of a fraudulent scheme to increase stock prices. As the Superior Court found:

> With respect to the allegedly wrongful conduct in the underlying actions, both cases involve the same fraudulent scheme—artificially raising stock prices by misrepresenting First Solar's ability to produce solar electricity at costs comparable to the costs of conventional energy production. In other words, both actions allege that First Solar misrepresented its ability to achieve grid parity. Both actions allege that First Solar concealed defects in the design and manufacturing of modules and panels. Both actions allege that First Solar manipulated

Answering Br. at 27; XL Specialty Answering Br. at 27. In our view, it is more like a reframing of an argument First Solar already made (namely, that the complaints are fundamentally different), and we include it in our analysis.

[55] Opening Br. at 3; *see also id.* at 26–27.

[56] Cost-per-watt and grid parity are both ways of describing how much a source of power costs. Cost-per-watt can be any number of price levels, while grid parity is a specific price level. And the *Maverick* Action expressly links those two concepts. *See, e.g.*, App. to Opening Br. at A229–30 (Maverick Complaint ¶ 204) ("Further, with respect to cost per watt, Gillette misleadingly stated: 'So what it means for our [grid parity] roadmap, is we're committed to delivering on the roadmap as we planned and still have that same target range in 2014 to get to that $0.52 to $0.63 range.'").

[57] *Id.* at A250, A556.

18

its costs, including cost-per-watt metrics. Both actions allege that First Solar issued false financial reports in violation of GAAP. Both actions allege that First Solar's deceptions came to light on February 28, 2012.[58]

First Solar also argues that categorical differences between the two Actions show that they are not fundamentally identical, nor sufficiently related. It cites the *Pfizer* decision as an example of a case where the Superior Court found two complaints were not sufficiently related. According to First Solar, *Pfizer* "involv[ed] the same drug" but "one claimed alleged false representations regarding the *cardiovascular risks* associated with Celebrex and the other alleged false and misleading statements regarding the *gastrointestinal health risks* of Celebrex."[59] Similarly, First Solar points to the Superior Court's finding in *Medical Depot, Inc. v. RSUI Indemnity Co.* that two actions based on the same product but with entirely different fact patterns and causes of action were unrelated.[60]

Although the Actions are not identical in their claims or evidence, absolute identity is not required. In *Pfizer*, the court addressed two claims about different side effects, with different omissions and misrepresentations.[61] The claims

---

[58] *First Solar*, 2021 WL 2563023, at *6.

[59] Opening Br. at 33 (citing *Pfizer*, 2019 WL 3306043).

[60] *Id.* (citing *Med. Depot*, 2016 WL 5539879).

[61] *Pfizer*, 2019 WL 3306043, at *10 ("The *Garber* Action was brought by Pharmacia's shareholders seeking redress for fraudulent and misleading statements Pharmacia and its co-marketer Pfizer made regarding the gastrointestinal health risks of Celebrex . . . The *Morabito* plaintiffs, on the other hand, brought suit against Pfizer and some of its executives for false representations and omissions regarding the cardiovascular risks associated with Celebrex and another drug, Bextra . . . In short, while there may be some thematic similarities, the Underlying Actions are truly, in all relevant respects, different.").

overlapped in that they involved the same drug. But the Wrongful Acts in that case—the misrepresentations made about gastrointestinal and cardiovascular health risks, respectively—were substantially different, relying on different concepts, pharmaceutical trials, and statements.[62] The same is true for *Medical Depot*. In that case, the product and defendants in both actions were the same, but the actions did not share any other operative facts, legal theories, or similarities.[63] Here, as in *United Westlabs*, the Actions involve "the same subject, as well as common facts, circumstances, transactions, events, and decisions[.]"[64] They are substantially similar and fundamentally identical.

The Superior Court noted that "[t]he most apparent striking difference between the underlying actions is the type of damages sought by the *Maverick* plaintiffs, with the apparent intent of garnering greater recovery."[65] The damages

---

[62] *Id.* ("the *Garber* plaintiffs alleged that Pharmacia and Pfizer publically [*sic*] misrepresented the results of its CLASS Study to create the impression that Celebrex users 'had fewer upper-GI toxic effects than those who took other traditional NSAIDs[ ]' . . . [while] the alleged market harm in the *Morabito* Action stemmed specifically from the defendants 'repeatedly touting internal safety data which they claimed demonstrated cardiovascular safety' while they 'were in possession of completed drug safety studies and other data and information which documented the serious cardiovascular risks of Celebrex and/or Bextra.'").

[63] *Med. Depot*, 2016 WL 5539879, at *14 ("The *Swisher* action and the *Mezzadri* action are different. The *Swisher* action was a wrongful death and products liability action. Swisher sought redress for the sling's causing a death. The Initial Complaint and Amended Complaint are a class action lawsuit alleging violations of California's Business & Professions Code sections 17200 and 17500, and Civil Code 1750, *et seq.* Mr. Mezzadri is seeking redress for buying the sling. Mr. Mezzadri never claimed that the sling caused him physical harm.").

[64] *United Westlabs*, 2011 WL 2623932, at *11.

[65] *First Solar*, 2021 WL 2563023, at *6. As noted above, the theories of recovery are also slightly different. The *Maverick* Action, besides the federal securities claims, alleges violations of Arizona securities laws—which map to the federal claims—and common law causes of action (fraud and

20

are slightly different. The *Smilovits* plaintiffs sought "actual damages and attorneys' fees" while the *Maverick* plaintiffs sought "[r]escission or rescissionary damages; actual damages; punitive damages for common law fraud; pre- and postjudgment interest and attorneys' fees."[66] But the thrust of the Wrongful Acts alleged in the two Actions is the same regardless of how damages are claimed.

Finally, if there is any remaining doubt about relatedness under the Primary Policy language, we can rely on what First Solar said about the two Actions when insurance coverage was not at issue. First Solar agreed in another matter that the Actions were nearly identical. In addition to seeking and receiving coverage for the *Maverick* Action as an action related to the *Smilovits* Action under its 2011–2012 policies, First Solar filed a "Motion to Transfer Related Case" to litigate the two Actions before the same judge. It argued that "[t]he substantial overlap in legal and factual issues and the substantial overlap in parties weigh in favor of transferring the Maverick [] Action to this Court."[67] In its filings, First Solar claimed that the *Maverick* Action made "nearly identical allegations" to other actions "asserting that

---

negligent misrepresentation), based on the same misrepresentations. Compare A.R.S. § 44-1999(B) (controlling persons liability) with Section 20(a) of the Exchange Act (controlling persons liability), and A.R.S. § 44-1991(A)(2)-(3) (prohibiting untrue statements of material fact relating to securities) with 17 CFR § 240.10b-5 (prohibiting untrue statements of material fact relating to securities). App. to Opening Br. at A255, A256 (Maverick Complaint ¶¶ 300, 308). But the state claims largely map to the federal securities laws.

[66] Opening Br. at 27.

[67] *Id.* at B078.

First Solar's stock price decline was somehow caused by a fraudulent scheme to conceal the existence and costs of various manufacturing deviations."[68]

C.

First Solar also claims that even if the Actions are Related Claims, the Actions have "distinct wrongful acts" such that non-excluded separate claims exist.[69] First Solar asks us to look at the individual misrepresentations—for instance, the specific statements made in conference calls and SEC filings—as separate Wrongful Acts under the Primary Policy.[70] It contends that all "non-overlapping alleged misrepresentations and corrective disclosures are independent claims" that do not relate back and must be covered under the Primary Policy.[71]

But as the Superior Court ruled, the Wrongful Act is the fraudulent scheme to inflate the price of First Solar's stock by making misrepresentations about its solar power cost and efficiency.[72] The *Smilovits* Action and the *Maverick* Action include different misrepresentations and evidence to support their claims—not different Wrongful Acts. It is analogous to *United Westlabs*, where the Superior Court held that United Westlabs had "engaged in a continuous series of related acts, constituting

---

[68] *Id.* at B141–43.
[69] Opening Br. at 37.
[70] *See* Reply Br. at 16–18.
[71] *Id.*
[72] *First Solar*, 2021 WL 2563023, at *6.

22

a single wrongful act as defined by the" policy at issue, even though the complaints spanned different time periods and included different allegations.[73]

D.

Finally, First Solar claims in a footnote that the Superior Court incorrectly applied the Relation Back Provision of the Primary Policy instead of the Specific Matter Exclusion.[74]  This argument was not sufficiently briefed and is waived.[75]  But even so, the Primary Policy's Relation Back Provision applies when two claims are related.  Under the Policy, "any Related Claim that is subsequently made against an Insured . . . shall be deemed to have been first made at the time that such previously reported Claim was first made."[76]  Claims first made before the inception date of the Primary Policy "are not covered under this policy."[77]  The Superior Court correctly applied the Primary Policy language, because if the *Maverick* Action relates back to the *Smilovits* Action, it is deemed "first made" at the time of the *Smilovits* Action and thus "not covered under this policy."[78]

---

[73] *United Westlabs*, 2011 WL 2623932, at *11.  First Solar also relies on *AT&T Corp. v. Faraday Capital Ltd.* to argue that individual causes of action can be different Wrongful Acts.  Opening Br. at 37–38 (citing 918 A.2d 1104, 1108–09 (Del. 2007)).  But we held in *AT&T Corp.* that new Wrongful Acts could exist when causes of action did not "arise out of the same underlying wrongful conduct[.]" 918 A.2d. at 1109.  Here, the causes of action were based on the same underlying wrongful conduct—a fraudulent scheme to raise First Solar's stock price by misrepresenting its PV capabilities.

[74] Opening Br. at 20 n.8.

[75] Supr. Ct. R. 8.

[76] App. to Opening Br. at A050 (Primary Policy § 7(b)).

[77] *Id.*

[78] *Id.* at A050.

Using the Primary Policy's Related Claim definition, the *Maverick* Action raised claims "alleging, arising out of, based upon or attributable to any facts or Wrongful Acts that are the same as or related to those" raised in the *Smilovits* Action. Thus, the *Maverick* Action Claim is deemed first made at the time of the *Smilovits* Action and is excluded from coverage under the Related Claim Exclusion of the Policies.

## III.

The judgment of the Superior Court is affirmed.

24